**ALBANY INSURANCE COMPANY,**
Plaintiff–Appellant,

v.

**ANH THI KIEU, Defendant–Appellee.**

No. 90–4218.

United States Court of Appeals,
Fifth Circuit.

April 5, 1991.

Rehearing and Rehearing En Banc
Denied May 20, 1991.

Richard J. White, Clann, Bell & Murphy, Houston, Tex., Francis J. Barry, Jr., Deutsch, Kerrigan & Stiles, New Orleans, La., for plaintiff-appellant.

Jon B. Burmeister, Everrett H. Sanderson, Moore, Landrey, Garth & Jones, Beaumont, Tex., for defendant-appellee.

Before JOHNSON, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

Oblivious to the tangled mess it has left the practitioner to decipher, this Court has extended numerous—and often seemingly inconsistent—explanations of the appropriate choice of law in marine insurance disputes. Our task in the instant appeal is to untie the Gordian knot. Albany Insurance Company ("Albany") challenges the district court's declaration that appellee Anh Thi Kieu recover some $90,405 in damages and "sue and labor" charges under a marine insurance contract. The district court determined that Texas insurance law, and not federal maritime or Louisiana insurance law, governed the parties' rights and obligations. Unable to conclude that the district court committed reversible error, this Court affirms the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

In February 1988, Anh Thi Kieu, a Vietnamese immigrant who resides in Texas, attempted to secure marine hull insurance coverage on the F/V STACY MARIE, a sixty-five foot shrimping vessel. An independent agent, the Edgar Coco Agency, Inc., of Marksville, Louisiana, submitted to Anh Thi Kieu an application for insurance coverage from Albany Insurance Company. Although it was printed in English, Anh Thi Kieu completed the application. The Edgar Coco Agency forwarded the application to Albany's general agent, G & M Insurance Company. On March 1, 1988, Albany approved coverage of the STACY MARIE and forwarded a policy to Anh Thi Kieu.[1]

It is undisputed that Anh Thi Kieu's application for insurance coverage contained several inaccurate statements. Among other things, Anh Thi Kieu recited (1) that she regularly operated the STACY MARIE as captain, (2) that the vessel had sustained no damages in the last five years, and (3) that she had purchased the vessel for $110,000. In truth, Anh Thi Kieu purchased the STACY MARIE in 1984 for $30,000 and assembled an independent crew to guide the vessel in fishing and shrimping operations off the coast of Port Arthur, Texas. Late in 1984, the STACY MARIE collided with an offshore repair boat and suffered minor damage that was repaired by a marine shipyard in Freeport, Texas. Albany Insurance Company had ample opportunity to discover these facts and cancel coverage. Instead, Albany continued to receive premiums from Anh Thi Kieu and to extend coverage on the STACY MARIE.

On November 3, 1988, the STACY MARIE allided with an unmarked offshore Department of Energy platform. The allision damaged the hull planking on the vessel and opened a gaping hole on its port bow. Assisted by the Coast Guard and another shrimp boat, the crew of the STACY MARIE successfully floated the vessel to Sabine Pass, Texas. There, Sabine Offshore Services, Inc. ("Sabine Offshore"), agreed to place the STACY MARIE in dry storage in its dock yard. Anh Thi Kieu apparently secured these dry storage arrangements with Sabine Offshore in an effort to "save and preserve" the STACY MARIE.

After learning from Anh Thi Kieu that the vessel had suffered an allision, Albany investigators surveyed the damage. The investigators recommended that Albany deny any liability under the marine hull insurance policy. Subsequently, Albany filed a declaratory judgment action in federal district court requesting a declaration of Anh Thi Kieu's rights in the policy. The district court entered findings of fact and conclusions of law on February 21, 1990. The court declared that Anh Thi Kieu should recover the insured value of the STACY MARIE ($90,000) minus the salvage value of the vessel's hull ($15,000)—a total of $75,000 in damages. In addition, the court ordered that Anh Thi Kieu recov-

---

**1.** The insurance policy designates the name of the covered vessel as the "STACEY MARIE." Both parties in their briefs, however, refer to the vessel as the "STACY MARIE." For the sake of consistency, we will adopt the second spelling.

er $15,405 in "sue and labor" charges—an amount intended to cover the storage fees at Sabine Offshore.

## II. DISCUSSION

■ Albany raises a number of arguments on appeal. The most significant of these arguments attack the district court's application of Texas insurance law. Albany argues that the district court erroneously applied Texas insurance law and instead should have applied the federal law of *uberrimae fidei*. In the alternative, Albany argues that the district court should have applied Louisiana insurance law instead of Texas insurance law. Maritime commerce traverses the waters of many states. A set of facts in a maritime case could conceivably implicate the laws of several states, as well as the federal laws of the United States. Thus, in determining the applicable law, a court first must consider whether federal maritime law is preeminent, and then often must also consider whether one state's law is applicable over another state's law. We begin with the federal preemption analysis.

### A. *Maritime Preemption*

■ Albany contends that the federal law of *uberrimae fidei*, which invalidates marine insurance contracts on evidence of the assured's material misrepresentations to the underwriter, supports its denial of liability on the policy covering the STACY MARIE. Anh Thi Kieu responds that relevant provisions of the Texas Insurance Code preclude Albany's denial of coverage. The issue is simply stated, but the law is complex: does federal maritime law or state insurance regulation determine the effect of an assured's misrepresentations? Although the courts typically rely upon federal common law to resolve maritime disputes, state law occasionally can be used to supplement or even supersede maritime law. *Coastal Iron Works, Inc. v. Petty*

*Ray Geophysical*, 783 F.2d 577, 582 (5th Cir.1986); *J. Ray McDermott & Co. v. The Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir.) (en banc), *cert. denied*, 409 U.S. 948, 93 S.Ct. 271, 34 L.Ed.2d 218 (1972).[2] State law is particularly significant in marine insurance disputes.

■ In *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), the United States Supreme Court concluded that the regulation of marine insurance is, in most instances, properly left with the states. *Id.* at 321, 75 S.Ct. at 374–75. Following the direction of the Court in *Wilburn Boat*, the Fifth Circuit has ruled that "the interpretation of a contract of marine insurance is—in the absence of a specific and controlling federal rule—to be determined by reference to appropriate state law." *Ingersoll–Rand Financial Corp. v. Employers Ins. of Wausau*, 771 F.2d 910, 912 (5th Cir. 1985). This presumption of state law is, by now, "axiomatic." *INA of Texas v. Richard*, 800 F.2d 1379, 1380 (5th Cir.1986). State law, therefore, governs the interpretation of marine insurance policies unless an available federal maritime rule controls the disputed issue. This Circuit has identified three factors that a court should consider in determining if a federal maritime rule controls the disputed issue: (1) whether the federal maritime rule constitutes "entrenched federal precedent," *Fireman's Fund Ins. Co. v. Wilburn Boat Co.*, 300 F.2d 631, 633 (5th Cir.), *cert. denied*, 370 U.S. 925, 82 S.Ct. 1562, 8 L.Ed.2d 505 (1962); (2) whether the state has a substantial and legitimate interest in the application of its law, *Morrison Grain Co. v. Utica Mut. Ins. Co.*, 632 F.2d 424, 429 (5th Cir.1980); (3) whether the state's rule is materially different from the federal maritime rule, *Walker & Sons, Inc. v. Valentine*, 431 F.2d 1235, 1239 (5th Cir.1970). *See Kossick v. United Fruit Co.*, 365 U.S. 731, 738–39, 81 S.Ct. 886, 891–92, 6 L.Ed.2d

2. It is well settled that a marine insurance policy is a maritime contract within federal admiralty jurisdiction. *Morrison Grain Co. v. Utica*

*Mut. Ins. Co.*, 632 F.2d 424, 428 n. 4 (5th Cir. 1980); *Irwin v. Eagle Star Ins. Co.*, 455 F.2d 827,

56 (1961).[3] These factors are merely instructive and not dispositive. We address them in reverse order.

■ *State insurance law generally should not govern marine insurance disputes if it is materially different from federal maritime law.* The application of state law inconsistent with the core principles of maritime law "would defeat the reasonably settled expectations of maritime actors." *Exxon Corp. v. Chick Kam Choo,* 817 F.2d 307, 318 (5th Cir.1987), *rev'd on other grounds,* 486 U.S. 140, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). While there is no requirement that state insurance regulations precisely mirror parallel federal regulations, state law should not be applied unless it bears a reasonable similarity to the federal maritime practice. We find a reasonable similarity between the applicable federal and state laws in the instant case. Under the *uberrimae fidei* doctrine, an assured's material misrepresentations invalidate the policy of insurance *ab initio. Gulfstream Cargo, Ltd. v. Reliance Ins. Co.,* 409 F.2d 974, 980–81 & n. 20 (5th Cir.1969). Under Texas law, an assured's misrepresentations may invalidate the policy of insurance, but only if the insured intended to deceive the insurer. *Mayes v. Massachusetts Mutual Life Ins. Co.,* 608 S.W.2d 612, 616 (Tex.1980). Texas law, unlike federal law, imposes an appropriate limitation that relatively minor misstatements which the insured did not in-

tend to make do not afford the insurer an excuse to refuse payment. The fundamental nature of both laws, however, is the same. Texas insurance law shares the concern of federal maritime law that an assured should not profit from her material misrepresentations to the underwriter.

■ *State insurance law generally should not govern marine insurance disputes if the state does not have a substantial and legitimate interest in the application of its law.* Federal maritime law properly controls any maritime dispute in the absence of a substantial and legitimate state interest. Stated conversely, state law should not be applied unless the local state interest materially exceeds the comparative maritime concerns in the controversy. *See Grant Smith–Porter Ship Co. v. Rohde,* 257 U.S. 469, 477, 42 S.Ct. 157, 158, 66 L.Ed. 321 (1922); *Walter v. Marine Office of America,* 537 F.2d 89, 94–95 (5th Cir. 1976). It is evident in the instant case that the local state interest is substantial and legitimate. Regulation of insurance relationships, including marine insurance relationships, has historically been a matter of state concern. *See Wilburn Boat Co.,* 348 U.S. at 316, 75 S.Ct. at 371. From their experience, states are far better equipped to balance the risks that each party to an insurance contract endures. The State of Texas has concluded that the burden of unintentional misrepresentations should fall on the insurance underwriter. Texas has a material interest in ensuring that marine insurance underwriters do not in-

829 (5th Cir.), *cert. denied,* 409 U.S. 852, 93 S.Ct. 118, 34 L.Ed.2d 95 (1972).

**3.** Our Circuit has taken varying, and arguably inconsistent, approaches to the precedential authority of *Kossick v. United Fruit Co.,* 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961). In at least one opinion, this Court assumed that *Kossick* essentially limited *Wilburn Boat* to its factual scenario. *McDuffie v. Old Reliable Fire Ins. Co.,* 608 F.2d 145, 147 n. 1 (5th Cir.1979). In another case, however, the Court severely criticized and declined to follow the *Kossick* opinion, concluding that it only contributed confusion to the question whether maritime law controlled the interpretation of marine contracts. *Irwin v. Eagle Star Ins. Co.,* 455 F.2d 827, 829–30 (5th Cir.), *cert. denied,* 409 U.S. 852, 93 S.Ct. 118, 34 L.Ed.2d 95 (1972). Still other cases ignore *Kossick* altogether. *See, e.g., Transco*

*Exploration Co. v. Pacific Employers Ins. Co.,* 869 F.2d 862, 863 (5th Cir.1989) (applying *Wilburn Boat* standard without reference to *Kossick* ); *INA of Texas,* 800 F.2d at 1380 (same).

We find no need to either chastise or ignore *Kossick.* Like *Wilburn Boat, Kossick* agrees that, in the absence of a specific and controlling federal rule, state law governs marine contracts. 365 U.S. at 742, 81 S.Ct. at 894. *Kossick* instructs that the determination whether a federal rule is specific and controlling is not a mechanical endeavor. In particular, a reviewing court must consider the influence of the doctrines of federal supremacy and uniformity of laws. *Id.* at 738, 81 S.Ct. at 891–92. These doctrines are subsumed within the three factors which this Court has concluded are instructive on the question whether a federal maritime rule controls a disputed issue.

validate the insurance protection of Texas citizens on the basis of misrepresentations that were neither willfully or intentionally asserted.

 *State insurance law generally should not govern marine insurance disputes if an existing federal maritime rule constitutes "entrenched federal precedent."* Maritime law, as federal common law, supersedes state law if the maritime law specifically governs the conduct in question and consistently has been invoked to control such conduct. In the absence of preexisting entrenched federal maritime law, this Court will refuse to impose unfamiliar federal common law maritime requirements on the parties to a marine insurance contract. *See INA of Texas,* 800 F.2d at 1382 ("In case after case, we have applied state law in interpreting marine insurance policies, because there is no contrary federal admiralty rule."). The application of unfamiliar federal maritime rules engenders undesirable uncertainty among maritime actors; this Court can easily avoid such uncertainty by the application of "already well-developed state laws." *Chick Kam Choo,* 817 F.2d at 317.

The question whether the *uberrimae fidei* doctrine is entrenched federal precedent is troublesome. Repeated references to the doctrine appear in early United States Supreme Court opinions. *See, e.g., Stipcich v. Metropolitan Life Ins. Co.,* 277 U.S. 311, 316, 48 S.Ct. 512, 513, 72 L.Ed. 895 (1928); *Phoenix Life Ins. Co. v. Raddin,* 120 U.S. 183, 189, 7 S.Ct. 500, 502, 30 L.Ed. 644 (1887). The Supreme Court applied the *uberrimae fidei* doctrine as a "traditional" aspect of insurance law in general. *See Stipcich,* 277 U.S. at 316, 48 S.Ct. at 513 ("Insurance policies are traditionally contracts uberrimae fidei and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option."). As mentioned, though, insurance law is typically a matter of state concern. Over the years most states aban-

doned the strict *uberrimae fidei* articulation. Today, the sole remaining substantial vestige of the doctrine is in maritime insurance law. *See* 2 Arnould, Marine Insurance & Average § 575, at 531 (13th ed. 1950); F. Tempelman & C. Greenacre, Marine Insurance 16–17 (4th ed. 1934); W. Winter, Marine Insurance 223 (3d ed. 1952).

Even under maritime law, the federal courts have rarely invoked the *uberrimae fidei* doctrine. Despite the long history of the doctrine in the Supreme Court, only three cases—two of which date from the 1960s—have examined the availability of the doctrine in this Circuit. Each of these cases has confidently asserted that the doctrine is "well recognized" in federal law. Indeed, in *Fireman's Fund Insurance Co. v. Wilburn Boat Co.,* 300 F.2d 631 (5th Cir.1962), the Court expressly declared that the *uberrimae fidei* doctrine "is solidly entrenched in our body of federal maritime law." *Id.* at 647 n. 12 (emphasis added).[4] In *Gulfstream Cargo, Ltd. v. Reliance Insurance Co.,* 409 F.2d 974 (5th Cir.1969), the Court, relying extensively upon its language in *Fireman's Fund Insurance Co.,* stated without equivocation that "[n]othing is better established in the law of marine insurance than that 'a mistake or commission material to a marine risk, whether it be wilful or accidental, or result from mistake, negligence or voluntary ignorance, avoids the policy.'" *Id.* at 980 (quoting *Fireman's Fund Insurance Co.,* 300 F.2d at 646). Each of these cases has declined, however, to enforce the strict *uberrimae fidei* rule as the basis for the invalidation of a marine insurance policy.

The circumstances in *Fireman's Fund Insurance Co.* and *Gulfstream Cargo, Ltd.* were unusual. In both cases, the Court assumed, without formally deciding, that the *uberrimae fidei* doctrine was controlling federal precedent. The Court nonetheless resolved each case on state law grounds, concluding that state insurance law would not permit the respective plain-

---

**4.** The Court's opinion in *Fireman's Fund Insurance Co.* was rendered on remand from the Supreme Court's reversal of this Circuit's original conclusion that a marine insurance contract should be interpreted under general maritime law requiring literal performance of warranties. 201 F.2d 833 (5th Cir.1953), *rev'd,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955).

tiffs to recover under their marine insurance policies. In *Fireman's Fund Insurance Co.*, the Court remarked that, because Texas law would not afford relief anyway, the applicability of the *uberrimae fidei* doctrine was "of minimal significance." 300 F.2d at 647 n. 12. In *Gulfstream Cargo, Ltd.*, the Court echoed its prior opinion and conceded that it was "unnecessary" to further resolve the struggle between federal and state law in marine insurance disputes. 409 F.2d at 981.

The circumstances were equally unusual in the only other case in this Circuit to discuss the availability of the *uberrimae fidei* doctrine. In *Austin v. Servac Shipping Line*, 794 F.2d 941 (5th Cir.1986), the Court affirmed a district court's conclusion that the *uberrimae fidei* doctrine did not preclude the plaintiff's recovery under a marine hull insurance policy. The Court emphasized that, even if the doctrine existed, the *uberrimae fidei* doctrine did not require invalidation of the policy because the plaintiff's alleged misrepresentations were not "material." *Id.* at 944.[5] Consequently, like *Fireman's Fund Insurance Co.* and *Gulfstream Cargo Ltd.*, *Austin's* expression of the significance of the doctrine was mere dicta.

It is the accepted practice of this Court that one panel cannot overturn the decisions of another. *See Hodge v. Seiler*, 558 F.2d 284, 287 (5th Cir.1977); *Puckett v. Commissioner*, 522 F.2d 1385, 1385 (5th Cir.1975). None of the opinions of this Court which have cited the *uberrimae fidei* doctrine *authoritatively* conclude, however, that the doctrine applies to the exclusion of state law. For that matter, no opinion of this Court has ever explicitly authorized the application of the *uberri-*

*mae fidei* doctrine to invalidate a marine insurance policy. The *uberrimae fidei* doctrine, in sum, is a rule which this Court has recognized, *but never applied.* We therefore conclude, albeit with some hesitation, that the *uberrimae fidei* doctrine is not "entrenched federal precedent."

The facts in the instant case are analogous to the facts in the salient opinion of *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). The marine insurance underwriter in *Wilburn Boat Co.* refused to pay for the loss of a houseboat because the plaintiffs allegedly had breached certain warranties in the insurance policy. The underwriter sought application of a so-called "strict" breach of warranty rule under general maritime law. The Supreme Court, however, viewed this maneuver with skepticism. Noting that there were "very few federal cases on marine insurance in which the strict breach of warranty rule has even been considered," the Court determined that the strict breach of warranty rule had not been firmly established as part of the body of federal law. *Id.* at 315–16, 75 S.Ct. at 371–72. Accordingly, the Court required the application of state law. *Id.* at 321, 75 S.Ct. at 374.

The same result should ensue here. There are very few cases on marine insurance in this Circuit which have considered the *uberrimae fidei* doctrine. Even when this Court has considered the doctrine, it has not applied the doctrine. Perhaps the doctrine was "entrenched federal precedent" at the time of the *Fireman's Fund Insurance Co.* and *Gulfstream Cargo, Ltd.* decisions, but its spotty application in recent years—even in other circuits[6]—sug-

---

5. The district court in *Austin* determined that the plaintiff's alleged misrepresentations were not material to the defendant underwriter's calculation of the risk. This Court on appeal concluded that the district court's finding was not clearly erroneous. *Austin*, 794 F.2d at 944. "A material fact is any fact, 'the knowledge or ignorance of which would naturally influence an insurer in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of insurance.'" *Id.* at 943 (quoting *Fireman's Fund Ins. Co.*, 300 F.2d at 640). Similarly, the district court in the instant

case determined that Anh Thi Kieu's alleged misrepresentations were not material to Albany's calculation of the risk. Because this Court concludes that the Texas Insurance Code governs the instant action, we express no opinion concerning the propriety of the district court's determination that the misrepresentations were not material.

6. We recognize that our sister circuit, the Eleventh Circuit, has concluded that the *uberrimae fidei* doctrine is well settled and "as a clear rule of maritime law it is the controlling federal rule even in the face of contrary state authority."

gests that the *uberrimae fidei* doctrine is entrenched no more.

Concluding, as we do, that all three factors a court should consider in the marine insurance preemption analysis favor the application of state law, we therefore must examine the relevant state law to determine the viability of Anh Thi Kieu's request for compensation. But before we leave our discussion of the tug of war between federal and state law, we find it necessary to stress those decisions which we do *not* reach. This Court does not hold that federal maritime law no longer embraces the *uberrimae fidei* doctrine: while we have found no cases in this Circuit which apply the doctrine, we also have found no cases which expressly reject the doctrine. Neither does this Court hold that state insurance law always will supersede the *uberrimae fidei* doctrine. In an appropriate case, it is entirely possible that application of the doctrine would be more appropriate than application of the relevant state insurance regulations.[7]

### B. *Choice of State Law*

▮▮▮▮▮ After concluding that federal maritime law does not govern the assured's right to payment on the marine insurance policy, we next must determine whether Texas or Louisiana insurance law applies. Albany argues that, even if federal maritime law does not apply, the district court should have applied a similarly strict Louisiana law.[8] Although a federal court customarily applies the choice of law rules of the forum in which it is located, *Klaxon v. Stentor Electric Manufacturing Co.,* 313

U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), the court in maritime cases must apply general federal maritime choice of law rules. *Gonzalez v. Naviera Neptuno A.A.,* 832 F.2d 876, 880 n. 3 (5th Cir. 1987). *Cf. Hellenic Lines v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970); *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). In this case, we must consider the choice of law rules which specifically govern marine insurance disputes.

The decisions of this Court that attempt to explain the proper choice of state insurance law governing the interpretation of marine insurance policies are seemingly in conflict. This Court has held that "the law of the state in which the [insurance] contract was formed" determines the parties' rights. *Graham v. Milky Way Barge, Inc.,* 811 F.2d 881, 885 (5th Cir.1987). It has held that "the law of the state where the marine insurance contract was issued and delivered is the governing law." *Elevating Boats, Inc. v. Gulf Coast Marine, Inc.,* 766 F.2d 195, 198 (5th Cir.1985). *See also Eagle Leasing Corp. v. Hartford Fire Ins. Co.,* 540 F.2d 1257, 1261 (5th Cir.1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2926, 53 L.Ed.2d 1063 (1977). It has held that "[i]n identifying the appropriate state law to apply, we look to the state having the greatest interest in the resolution of the issues." *Truehart v. Blandon,* 884 F.2d 223, 226 (5th Cir.1989). *See also Transco Exploration Co. v. Pacific Employers Ins. Co.,* 869 F.2d 862, 863 (5th Cir.1989). Considered separately under the circumstances of this particular appeal, these choice of law rules

---

*Steelmet, Inc. v. Caribe Towing Corp.,* 747 F.2d 689, 695 (11th Cir.1984). However, the Eleventh Circuit itself has retreated from this broad view and held that state law may in at least some circumstances control to the exclusion of the *uberrimae fidei* doctrine. *See King v. Allstate Ins. Co.,* 906 F.2d 1537, 1540 (11th Cir. 1990) (parties to a marine insurance policy may agree to the application of state law).

**7.** We need not at this time explore all of the situations in which application of the *uberrimae fidei* doctrine might be proper. It is sufficient to note that if the applicable state insurance law is materially different from the *uberrimae fidei* doctrine—*e.g.,* the state law requires that "all

misrepresentations of the insured, whether or not material, invalidate the policy of insurance" or that "no misrepresentations of the insured, except those statements that the underwriter could not with due diligence discover were false, invalidate the policy of insurance"—the federal maritime law *might be* a more appropriate measure of the obligations of the assured.

**8.** Under Louisiana law, the insurance policy would be invalidated if the insured intentionally concealed or misrepresented a material fact during the application process. La.Rev.Stat. Ann. § 22:619 (West 1978 & Supp.1991); *see King v. Allstate Ins. Co.,* 906 F.2d 1537, 1539 (11th Cir.1990).

point the Court in entirely different directions: the contract was countersigned and therefore likely formed in Louisiana; it was issued in Louisiana but delivered in Texas; and Texas appears to have the greatest interest in the application of its law.

Nonetheless, we believe that we can reconcile these seemingly inconsistent choice of law rules. Modern choice of law analysis, whether maritime or not, generally requires the application of the law of the state with the "most significant relationship" to the substantive issue in question. *See* Restatement (Second) of Conflict of Laws § 6 (1980). In contract cases, courts must consider such factors as the place of formation of the contract and the place of negotiation of the contract to determine which states have sufficient contact with the transaction and the parties to support the application of their law. *Id.* § 188 (1971). However, the application of the most significant relationship approach does not simply turn on the number of contacts each state has with the controversy. The most significant relationship approach instead examines the relative interests of *all* of the states which share a sufficient relationship with the transaction and the parties. *Id.* § 6.

■■■ We conclude that the first two choice of law rules this Court has applied in marine insurance disputes—requiring the application of the law of the state in which the policy was formed or the law of the state in which the policy was issued and delivered—identify only the states which have sufficient contact with the policy and the parties that their laws *can* be applied. The third choice of law rule—requiring the application of the law of the state with the greatest interest—identifies the state law that *should* be applied. A federal court in a marine insurance dispute must apply the first two rules to isolate the "eligible" states; of these states, the court then must determine which state has "the greatest interest in the resolution of the issues." *Truehart,* 884 F.2d at 226.

A review of the first two choice of law rules reveals that both Texas and Louisiana have sufficient contact with the marine insurance policy and the parties to support the application of their insurance laws. Of these two states, Texas has a considerably greater interest in the application of its insurance code. Texas has a strong interest in the protection of its citizens, including Anh Thi Kieu, against the overbearing tactics of insurance underwriters. Louisiana's interest in the protection of citizens of foreign states is less significant. The insurance laws of Texas should have been applied, and appropriately, the district court so applied them. Albany's argument that Louisiana insurance law governs its dispute with Anh Thi Kieu lacks merit.

### C. *Application of Texas Insurance Law*

#### 1. Misrepresentations

■■■■ Under Texas insurance law, an insurer may invalidate a policy of insurance on the basis of the insured's misrepresentations in the insurance application only if the insurer can successfully plead and prove the following five elements: (1) the making of the representation; (2) the falsity of the representation; (3) reliance thereon by the insurer; (4) the intent to deceive on the part of the insured in making same; and (5) the materiality of the representation. *Mayes v. Massachusetts Mutual Life Ins. Co.,* 608 S.W.2d 612, 616 (Tex.1980); *Southern Life & Health Ins. Co. v. Medrano,* 698 S.W.2d 457, 461 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). The unique aspect of this Texas law is the requirement that the insurer plead and prove the insured's intent to deceive. "[I]t is incumbent upon the insurer to prove that the insured made some material misrepresentation 'willfully and with design to deceive or defraud,' as an element of this [misrepresentation] defense." *Soto v. Southern Life & Health Ins. Co.,* 776 S.W.2d 752, 756 (Tex.App.—Corpus Christi 1989, no writ). *See also Haney v. Minnesota Mutual Life Ins. Co.,* 505 S.W.2d 325, 328 (Tex.1974); *Allen v. American National Ins. Co.,* 380 S.W.2d 604, 607–08 (Tex.1964).[9]

---

**9.** In *Fireman's Fund Insurance Co. v. Wilburn* *Boat Co.,* 300 F.2d 631 (5th Cir.1962), this Court,

■ This Court, after a review of the record, is unpersuaded that the district court's rejection of Albany's misrepresentation defense requires reversal. Albany completely failed to fulfill its burden of proof. It offered absolutely no evidence that Anh Thi Kieu intended to deceive or defraud Albany. At most, Albany adduced evidence that Anh Thi Kieu, an immigrant who could not easily understand English, was careless in her completion of the insurance application. The negligence or carelessness of the insured in completing an application for insurance, however, does not support the invalidation of an insurance policy. "In short, false statements which are made negligently, carelessly or by mistake are not sufficient to avoid a[n] ... insurance policy where the defense is based upon the insured's misrepresentation of a material fact." *Soto*, 776 S.W.2d at 756.

## 2. Breaches of Warranty

■ Albany argues that, even if Anh Thi Kieu's misrepresentations in the insurance application do not invalidate the insurance policy, Anh Thi Kieu's breaches of certain express warranties in the insurance policy permit Albany to deny liability. The marine hull insurance policy contained two significant warranties: an owner aboard warranty, which warranted that Anh Thi Kieu would remain aboard the STACY MARIE at all times when the vessel was not safely in port, and a seaworthiness warranty, which warranted that Anh Thi Kieu would exercise due diligence to maintain the STACY MARIE in a seaworthy condition at all times during the life of the policy. Albany contends, and Anh Thi Kieu concedes, that the insured frequently was not aboard the STACY MARIE during its travels and especially was not aboard the STACY MARIE at the time of its allision with the Department of Energy platform. Albany further contends that at the time of the allision the STACY MARIE was not seaworthy because it was infested with marine toredo worms.

The Texas Insurance Code contains an "anti-technicality" provision which states that an insured's breach of warranty will not constitute a defense to an action on an insurance policy unless the breach caused or contributed to the destruction of the insured property. Tex.Ins.Code Ann. art. 6.14 (Vernon 1981 & Supp.1990). It is clear in the instant case that Anh Thi Kieu's breaches of the owner aboard warranty and the seaworthiness warranty had no causal relationship with the STACY MARIE's accident. The fact that Anh Thi Kieu was not on board the STACY MARIE at the time of the allision with the Department of Energy platform, for instance, did not make the allision any more likely or possible. Her presence on the vessel could not have prevented the STACY MARIE's allision with an unmarked and unlighted platform. Similarly, the fact that the STACY MARIE suffered an infestation of marine toredo worms did not contribute to the destruction of the vessel. The district court specifically rejected Albany's theory that the worms contributed to the hole formed in the hull of the STACY MARIE after the allision, and the evidence at trial supported this factual finding.[10]

Albany contends that the Texas anti-technicality provision does not apply if the breach from its very nature could not contribute to the destruction of the insured property. We do not doubt that this is a correct statement of the law; however, this

---

attempting to interpret Texas insurance law, reckoned that the insured's "intent to deceive" was not an element of a misrepresentation defense. *Id.* at 646. Subsequent Texas Supreme Court decisions have revealed that the Court's interpretation in *Fireman's Fund Insurance Co.* was wrong. *See, e.g., Mayes v. Massachusetts Mutual Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex. 1980); *Allen v. American Nat'l Ins. Co.*, 380 S.W.2d 604, 607–08 (Tex.1964). Since this Court, when required to interpret state law, is bound by the formulation of the law articulated by the highest court in the state, *see Ayo v.*

*Johns–Manville Sales Corp.*, 771 F.2d 902, 909 n. 4 (5th Cir.1985), we conclude that our prior interpretation of the misrepresentation defense in *Fireman's Fund Insurance Co.* is no longer authoritative.

**10.** Plaintiff's expert witness testified that there was evidence of toredo worms in the wooden hull of the STACY MARIE, but the infestation was light and did not contribute to the hole in the hull. Record Vol. III, at 160–61.

exception to the anti-technicality provision is not relevant here. It is certainly possible that, under a different set of circumstances, the breach of an owner aboard warranty or a seaworthiness warranty might contribute to the destruction of insured property. The district court's determination that Anh Thi Kieu's breaches did not contribute to the destruction of the STACY MARIE renders the Texas anti-technicality statute applicable.

D. *Agency Status of Independent Marine Broker*

Albany argues that the district court improperly interpreted the scope of the Edgar Coco Agency's authority. Albany cites a comment the district court judge made during trial:

> To begin with, it appears to me that the boat owner, Anh Thi Kieu, has been somewhat taken advantage of and has suffered a great deal as a result of her experience as boat owner of the STACY MARIE ... The Court feels that under the circumstances and considering the owner, [Ms.] Kieu that they [Albany] were not being exactly fair with her and they were being super technical.

Record Vol. III, at 205–07. Albany suggests that the district court inferred in these remarks that Anh Thi Kieu's misrepresentations, if any, were a result of the Edgar Coco Agency's strongarm tactics and that Albany ultimately is responsible for these tactics because the Coco Agency was its agent. Even if such vicarious liability were improper under Texas law—a questionable proposition [11]—we cannot conclude that Albany's interpretation of the district court's comment accurately reflects the court's intent. It is equally possible that the district court's remarks express frustration with Albany's "super technical"

denial of Anh Thi Kieu's claim, rather than with the Edgar Coco Agency's abuse of its relationship with the plaintiff.

If harmful error, a district court's remarks during a bench trial certainly can necessitate reversal. Clearly, however, the idle remarks of the court during trial do not implicate the rights of the parties as much as the court's final decision. On appeal, the focus of our review of a bench trial remains the district court's findings of fact and conclusions of law. As Albany concedes, the findings of fact and conclusions of law do not reflect that the district court imposed on Albany *any* responsibility for the actions of the Edgar Coco Agency. On the contrary, the findings of fact and conclusions of law quite unmistakably suggest that, if there were any overbearing or belligerent acts in the period before the denial of Anh Thi Kieu's claim, they were Albany's. The district court's remarks at trial are not inconsistent with this conclusion.

E. *Calculation of Damages*

Albany argues that the evidence does not support the district court's $75,000 damage award. In reviewing a court's determination of damages for the loss of a vessel, this Court accepts all factual findings unless they are clearly erroneous. *E.I. DuPont de Nemours & Co. v. Robin Hood Shifting & Fleeting Serv., Inc.,* 899 F.2d 377, 379 (5th Cir.1990). In the instant case, the district court's factual findings are not clearly erroneous. Anh Thi Kieu's expert witness, Captain R.J. Underhill, testified at trial that the STACY MARIE was a complete loss with damages exceeding the $90,000 insured value. Further expert testimony established that the salvage value of the STACY MARIE was a mere $15,-000. The plain and unambiguous provi-

**11.** It is not clear under Texas law whether an insurance broker is an agent of the insured or an agent of the underwriter. *Compare* Tex.Ins. Code Ann. arts. 21.02, 21.04 (Vernon Supp.1990) (conferring agency status on independent insurance companies that solicit policies from insurance carriers) *with Guthrie v. Republic Nat'l Ins. Co.,* 682 S.W.2d 634, 637 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (concluding that the "common law in this state does not

permit a soliciting agent to bind the insurance carrier by his actions.") *and Don Chapman Motor Sales v. National Savings Ins. Co.,* 626 S.W.2d 592, 597 (Tex.App.—Austin 1982, writ ref'd n.r.e.) ("The rule is that although an insurance broker acts for the insured in making the application for insurance and in processing the policy, he acts for the insurer in delivering the policy and in collecting and remitting the premium.").

sions of the insurance policy stated that the assured was not required to pay a deductible in the event of a complete loss.[12] After consideration of this evidence, the district court properly could award Anh Thi Kieu recovery in the amount of the difference between the $90,000 insured value and the $15,000 salvage value.

Albany complains that the district court did not adequately consider the testimony of Albany's own expert witness, Kenneth J. Osborne. As factfinder in a bench trial, however, the district court was not obligated to accept or even credit the testimony of Albany's experts. *Pittman v. Gilmore,* 556 F.2d 1259, 1261 (5th Cir.1977) ("It is settled law that the weight to be accorded expert opinion evidence is solely within the discretion of the judge sitting without a jury. While he may not arbitrarily fail to consider such testimony, he is not bound to accept it.").

### F. *Calculation of "Sue and Labor" Charges*

■ The district court awarded Anh Thi Kieu "sue and labor" charges in the amount of $15,405, some $8,000 short of the $23,000 requested. Even so, Albany contends that the district court's award is excessive as a matter of law. Sue and labor expenses are sums spent by the assured in an effort to mitigate damages and loss. "The purpose of the sue and labor clause [in an insurance contract] is to reimburse the insured for those expenditures which are made primarily for the benefit of the insurer to reduce or eliminate a covered

loss." *Blasser Bros., Inc. v. Northern Pan–American Line,* 628 F.2d 376, 386 (5th Cir.1980).

■ The district court's award of expenses under the sue and labor clause of an insurance contract is subject to the clearly erroneous standard of review. *Id.* The district court's award here withstands scrutiny. Testimony at trial suggested that the safest place for the STACY MARIE in light of its extensive damage was dry storage. If the vessel had not been stored, it likely might have capsized or sunk.[13] Accordingly, Anh Thi Kieu, in an effort to mitigate potential damages, placed the STACY MARIE in the dry dock at Sabine Offshore.[14] Anh Thi Kieu was entitled to reimbursement for these storage expenses; the court's award of $15,405 finds support in the evidence.[15]

### G. *Disposition of Bad Faith Counterclaim*

Both parties concede that the district court in its findings of fact and conclusions of law failed to dispose of Anh Thi Kieu's bad faith counterclaim against Albany. Anh Thi Kieu in this appeal abandons its counterclaim and asks this Court to conclude "that the assured's counterclaim is at minimum denied by implication." We have not discovered any authority for the proposition that the absence of a ruling on a party's claim is a denial of the claim by implication. We nonetheless conclude that under the particular facts of the instant case the district court's failure to dispose of the bad faith counterclaim does not re-

---

12. The insurance policy states in pertinent part: The sum of $10,000.00 shall be deducted from the total amount of any or all claims (including claims for sue and labor, collision liability, general average and salvage charges) resulting from any one accident. *This deduction does not apply to claims for total or constructive total loss.* Plaintiff's Exhibit No. 1 (emphasis added).

13. The examination of Anh Thi Kieu's expert witness, Captain R.J. Underhill, is revealing: ATTORNEY: In your expert opinion was it necessary to save and preserve the vessel to have her hauled out at Sabine Offshore at that time? CAPTAIN UNDERHILL: Yes, sir. ATTORNEY: Would she probably have sunk had they not hauled her out?

CAPTAIN UNDERHILL: She would have sunk. Record Vol. III, at 177.

14. It is curious that Albany should now complain that the storage expenses were excessive. Anh Thi Kieu continued to maintain the STACY MARIE in dry storage precisely because Albany repeatedly insisted that she save and preserve the vessel.

15. A Sabine Offshore invoice noted a daily charge of $32.50 for storage. Intervenor's Exhibit No. 2. The district court determined that this charge was reasonable. Concluding that the STACY MARIE had been in storage 474 days, the court calculated a total of $15,405 in sue and labor charges.

quire reversal. It would be a fruitless waste of judicial resources to remand a case for a ruling on a claim which the asserting party has effectively abandoned on appeal. *Cf. Allen v. Barnes Hosp.*, 721 F.2d 643, 644 (8th Cir.1983) (district court's failure to rule on constitutional arguments in bench trial is not error if the asserting party has waived the arguments).

## III. CONCLUSION

Upon consideration of the relevant choice of law principles, this Court concludes that Texas insurance law, rather than federal maritime law or Louisiana insurance law, properly governs the instant marine hull insurance dispute. The provisions of the Texas Insurance Code require that Albany compensate Anh Thi Kieu for the losses incurred by the insured vessel. Finding no reversible error in the district court's actions, this Court affirms.

AFFIRMED.