HULL & COMPANY, INC. and the Various Underwriters at Lloyds on Certificate No. 90CQ 311719286, Appellants

v.

R. CHANDLER, Appellee.

No. C14–94–00027–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 13, 1994.

Rehearing Overruled Nov. 3, 1994.

Theodore G. Dimitry, Thomas S. Leatherbury, Stephanie K. Crain, W. James Kronzer, Leslie C. Taylor, James D. Wise, Jr., Mark C. Clemer, Houston, for appellants.

Richard P. Hogan, Jr., David W. Holman, Kevin H. Dubose, Michael D. Sydow, Joe H. Reynolds, Kelli McDonald Sydow, Houston, for appellee.

Before ROBERTSON, CANNON and LEE, JJ.

## OPINION

ROBERTSON, Justice.

This is a bad faith insurance case. Appellee, R. Chandler (Chandler) sued appellants, The Various Underwriters at Lloyds on Certificate No. 90CQ 311719286 (Underwriters) and Hull & Company, Inc. (Hull), a wholesale insurance broker, alleging that they violated Texas law in denying Chandler's claim on a $400,000 marine insurance policy which covered Chandler's yacht, the ONE FINE DAY (the yacht). The yacht partially sank in calm harbor in Roatan, Honduras. A jury returned a verdict against Underwriters for breach of the common law duty of good faith and fair dealing, and against Underwriters and Hull for violation of the Insurance Code and the DTPA. Chandler elected to recover against Underwriters under the common law and against both appellants under the Insurance Code. In accordance with the jury's verdict and Chandler's election, the trial court rendered judgment holding appellants liable to Chandler for nearly $8 million in damages. Underwriters and Hull, raising eighteen and fourteen points of error, respectively, bring this appeal from that judgment. Chandler also perfected a cross-appeal claiming that the trial court erred in refusing to disregard the jury's finding of actual damages and in refusing to assess prejudgment interest on treble damages and attorney's fees. We reverse and remand.

In 1987, Chandler, an Arizona resident, invested $400,000 in the purchase and refurbishing of the ONE FINE DAY, a 1960 era wooden yacht (the yacht). Before the purchase, Chandler sought insurance on the yacht through his agent, Gallagher Braniff, Inc. (Gallagher Braniff), located in Houston, Texas. Through Hull, a Florida corporation located in Fort Lauderdale, Chandler ob-

tained a $400,000 named perils policy from Underwriters, an insurance syndicate located in London, England. That policy insured the yacht for losses up to $400,000 resulting from certain perils specifically enumerated in the policy. Chandler renewed the policy yearly and the policy was in effect at the time of the loss at issue.

On April 3, 1991, the yacht partially sank while unmanned and anchored in a calm harbor in Roatan, Honduras. The yacht captain, Phillip Richards, reported the sinking that same day to Gallagher Braniff in Texas, who in turn notified Hull in Florida by telephone and fax dated April 3rd. The initial notice of loss listed the probable amount of the entire loss as $400,000. Once notified of Chandler's claim, Underwriters immediately hired a surveyor, Edwin Geary, to investigate the partial sinking. Geary arrived in Roatan three days after the yacht sank. Geary inspected the yacht, interviewed Captain Richards, and prepared a written report. In his report, Geary concluded that the partial sinking of the yacht "was a direct result of rot and deterioration of the port and starboard stern tubes and wear and tear of the port and starboard packing glands." [1]

In a letter dated April 30, 1991, Underwriters' agent, Hull, informed Chandler that "based on information provided to date," Underwriters did "not find evidence of a claim for loss or damage due to an insured peril." Hull also informed Chandler that Underwriters' investigation was continuing and that Underwriters reserved the right to deny coverage if that investigation "fail[ed] to reveal information which would indicate coverage exists." Hull also invited Chandler to provide any information to Underwriters that would indicate the existence of coverage. Chandler never provided such information. Chandler contends that he did not do so because appellants failed to provide him with

---

1. As explained by Underwriters' in its brief:
   The propeller penetrates the hull of a yacht through the "shaft log." The "stern tube" and the "stuffing box" or "packing gland," protect the yacht from water coming through the shaft log. The stern tube lines the shaft log and protects the hull from continuous exposure to water. The stuffing box forms a seal around

the shaft log to control the amount of water entering the yacht. The stuffing box is attached to the shaft log by lag bolts. If the shaft log deteriorates because of dry rot, the lag bolts may pull free, and an excess amount of water may enter the yacht through the stuffing box.

a copy of Geary's report. Appellants on the other hand contend that it was unnecessary to provide a copy of the report because the information contained therein was relayed by telephone to Chandler's attorney.

In any event, both Chandler and Underwriters hired attorneys to provide a legal opinion regarding coverage. Needless to say, Underwriters' attorney disagreed with Chandler's attorney on the issue of whether the loss was covered by the policy. Relying on Geary's report and the opinion of its attorney, Underwriters denied Chandler's claim on September 3, 1991, five months after the loss.

In late June 1991, only three months after the loss, Chandler, then a Florida resident, brought suit against appellants for breach of contract, breach of the common law duty of good faith and fair dealing, and unfair and deceptive acts and practices under TEX.INS. CODE ANN. art. 21.21 (Vernon Supp.1994) and TEX.BUS. & COM.CODE ANN. §§ 17.50, 17.46 (Vernon 1987 and Supp.1994). Chandler alleged that his yacht deteriorated beyond repair as a result of appellants' conduct. Chandler claimed that he was entitled to the replacement and salvage costs of the yacht as actual damages, plus exemplary and treble damages and attorney's fees.

Before trial, the court made two crucial rulings. First, the court ruled that Chandler's loss was covered by the policy. Second, the court ruled that Texas law, not Florida law, applied to this lawsuit. The trial began on July 14, 1993. Two weeks later, the jury returned a verdict in favor of Chandler on most of the liability issues. The jury found that Chandler incurred actual damages of $1.2 million and $71,236.00, which were the reasonable and necessary costs to replace and salvage the yacht, respectively. The jury also found that Underwriters were grossly negligent and that appellants' acted knowingly, thereby entitling Chandler to recover exemplary damages under the common law and treble damages by statute, respectively. Finally, the jury awarded trial and appellate attorney's fees to Chandler as a percentage of his recovery. As we stated, Chandler elected to recover against Underwriters for breach of the duty of good faith and fair dealing and against both appellants for violation of the Insurance Code.

After the parties filed various post-verdict motions, the trial court entered judgment for Chandler on September 21, 1993. However, that judgment apparently did not correspond to Chandler's election or the jury's verdict. In particular, damages were based on a replacement cost of $2.5 million, rather than the $1.2 million found by the jury. In addition, prejudgment interest was awarded on exemplary and treble damages and on attorney's fees. Thus, the court awarded damages totalling nearly $17 million.

After the parties filed a myriad of post-judgment motions, the court entered a Final Judgment Nunc Pro Tunc on December 3, 1993. That judgment was identical to the court's previous judgment, except that the damages award conformed to Chandler's election and to the jury's findings. Also, the judgment did not include prejudgment interest on exemplary and treble damages or attorney's fees.

The court ordered that Chandler recover $2,053,481.40 from Underwriters and Hull, joint and severally. The court also ordered that Chandler recover $2,542,472.00 from Hull, individually, and $3,300,000.00 in exemplary damages from Underwriters. The court further ordered that Chandler recover $63,561.00 in appellate attorney's fees, plus post-judgment interest and costs. The damages totalled nearly $8 million. After filing additional post-judgment motions, the parties perfected an appeal from this judgment.

The parties agree that before we review the other points of error, we must first address the issue of what law applies.

In Underwriters' points of error sixteen through eighteen and in Hull's points of error twelve through fourteen, they complain about the application of Texas law to this dispute. Appellants initially contend that federal maritime law preempts the application of any state law on bad faith. Alternatively, appellants contend that if state law applies, federal maritime and Texas choice-of-law principles mandate application of Florida law to this dispute and that application of Texas law violated their constitutional rights

under the Due Process Clause of the Fourteenth Amendment and the Full Faith and Credit Clause.

Like the coverage issue, the trial court resolved the dispute over the applicable law before the beginning of trial. Appellants moved for summary judgment, requesting that the court apply Florida law instead of Texas law. In a single motion, Chandler responded to appellants' summary judgment motion, moved to apply Texas law, and moved for summary judgment on the issue of bad faith under Texas law. The trial court denied both motions for summary judgment, but granted Chandler's motion to apply Texas law. Appellants then filed a motion, asking the court to reconsider its order applying Texas law. Chandler filed a response and supplemental response to that motion. The court denied appellants' motion for reconsideration. On appeal, appellants essentially contend that the trial court erred in granting Chandler's motion to apply Texas law.

Initially, we address whether Chandler's bad faith claim is governed by federal maritime law or state law. However, before doing so, we consider Chandler's contention that appellants "waived application of maritime law by failing to object to evidence and jury questions regarding damages under federal maritime law." *See General Chemical Corp. v. De La Lastra*, 852 S.W.2d 916, 920–21 (Tex.), *cert. dism'd*, —— U.S. ——, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993). Though we find waiver, it is not for the reasons asserted by Chandler.

■ In the instant case, the trial court determined the applicable law before trial by written order after giving due consideration to the parties' motions. Appellants argue that they properly invoked federal maritime law in their Answer to Plaintiff's Third Amended Original Petition and that both parties invoked federal maritime law on summary judgment regarding the coverage issue. Appellants' motion for partial summary judgment on choice-of-law also states that "... defendants do not waive the issue raised as to whether the Texas Deceptive Trade Practices Act and/or Texas Insurance Code can apply to this contract of marine insurance." Maritime law, although properly invoked, can

be waived. *See De La Lastra*, 852 S.W.2d at 919. Notwithstanding the disclaimer urged in appellants' motion for partial summary judgment, at the time the choice-of-law dispute was before the trial court, appellants did not argue that federal maritime law preempted Chandler's bad faith claim under state law. Rather, appellants argued only that Florida law applied instead of Texas law. Preemption arguments which affect choice-of-law are waivable. *Id.* at 919–20. Accordingly, appellants waived any argument that federal maritime law preempts application of state law.

■ However, even if appellants had preserved error, we would hold that federal maritime law does not preempt Chandler's claims. The regulation of marine insurance is, in most instances, properly left with the states. *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 (5th Cir.), *cert. denied*, 502 U.S. 901, 112 S.Ct. 279, 116 L.Ed.2d 230 (1991) (citing *Wilburn Boat Co. v. Fireman's Fund Ins.*, 348 U.S. 310, 321, 75 S.Ct. 368, 374–75, 99 L.Ed. 337 (1955)). Following the direction of the Court in *Wilburn Boat*, the Fifth Circuit has ruled that interpretation of a contract of marine insurance is—in the absence of any specific and controlling rule— to be determined by reference to appropriate state law. *Albany Ins.*, 927 F.2d at 886. (citation omitted) Thus, state law governs the interpretation of marine insurance policies unless an available federal rule controls the disputed issue. *Id.*

■ Although the parties focus on the interpretation of the marine insurance policy which in this case involves application of federal maritime law, this case does not involve a suit on the policy. *See, e.g., Thangh Long Partnership v. Highlands Ins. Co.*, 32 F.3d 189, 191–92 (5th Cir.1994) (noting that "entrenched federal precedent" exists on the implied warranty of seaworthiness and the interpretation of Inchmaree Clauses in maritime insurance contracts). Rather, this case involves a suit based on the tort of bad faith. The Fifth Circuit, implicitly, and the First Circuit, expressly, hold that state bad faith law is not preempted by federal maritime law. *P.T. Tugs, Inc. v. United States Fire*

*Ins. Co.*, 796 F.2d 125, 127–28 (5th Cir.1986); *Pace v. Insurance Co. of North Am.*, 838 F.2d 572, 579–80 (1st Cir.1988). Appellants argue that applying state law to Chandler's bad faith causes of action would greatly interfere with the uniformity of federal maritime law. However, such a threat to uniformity would arise only where: 1) there is entrenched federal precedent on the issue in dispute; 2) the state has substantial interest in applying its law; and 3) the state law materially differs from federal maritime law. *See Albany Ins.*, 927 F.2d at 886–90. Because there is no federal maritime law governing bad faith, application of state bad faith law would not interfere with the federal maritime law. Therefore, the trial court properly applied state law to Chandler's bad faith cause of action.

■ Having determined that state law is controlling, the only remaining question is whether the trial court applied the proper state law under a choice-of-law analysis. That question is one of law and therefore, subject to *de novo* review. *See Bailey v. Dolphin Int'l Inc.*, 697 F.2d 1268, 1274 (5th Cir.1983); *see also In the Matter of Humphreys*, 880 S.W.2d 402, 404 (Tex.1994) and *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984). In the instant case, the parties confined their choice-of-law dispute to a choice between Texas or Florida law.

■ Chandler argues that appellants waived application of Florida law by not providing the court with citations to Florida law. Ordinarily, such a showing would be required before undertaking a choice-of-law analysis so that the court can determine whether a true conflict of laws exists. *See Baird v. Bell Helicopter Textron*, 491 F.Supp. 1129, 1139 (N.D.Tex.1980); *see also Duncan*, 665 S.W.2d at 419. However, citation to Florida law and a determination of a conflict was unnecessary where, as here, the parties did not dispute the existence of a conflict between Florida and Texas law, but instead proceeded to argue only about which state had the more significant relationship to the issue in dispute. Indeed, in his motion in response to appellants' motion for summary judgment on choice-of-law, Chandler admitted that "Texas law and Florida law differ in several respects so that a choice of law analysis must be conducted in this case." [2] Hence, Chandler cannot now complain that appellants waived application of Florida law and we proceed with a choice-of-law analysis.

Whether we apply the choice-of-law rules which specifically govern maritime insurance disputes or Texas choice-of-law principles, the test is the same. *Albany Ins.*, 927 F.2d at 891; *Duncan*, 665 S.W.2d at 421. That is, we must apply the law of the state with the most significant relationship to the particular substantive issue in question. *Albany Ins.*, 927 F.2d at 891; *Duncan*, 665 S.W.2d at 421. Thus, the issue before this court is whether Texas or Florida has the most significant relationship to Chandler's assertion that appellants unreasonably denied or delayed payment of his claim. While we may consider factors such as where the insurance contract was formed and where it was issued and delivered, we must pay particular attention to those significant state contacts which relate to the tort of bad faith in accordance with the principles set forth in Sections 6 and 145 of the RESTATEMENT (SECOND) OF CONFLICTS OF LAW (1971). *See Albany Ins.*, 927 F.2d at 890–91; *see also Duncan*, 665 S.W.2d at 420–21.

■ In the instant case, Florida, has the most significant relationship to the issue in dispute. Acting on Chandler's behalf, Gallagher Braniff applied for coverage in Florida with Hull, a Florida corporation. Gallagher Braniff's account executive, Mark Jones, went to Florida to place the policy. The insurance contract was therefore formed in Florida and issued in Florida. The policy

---

**2.** Chandler took a contrary position in response to appellants' Motion for Judicial Notice of Florida Law filed after the court's first judgment. Because his statement in his response to appellants' motion for partial summary judgment on choice-of-law comports with the requirements of a judicial admission, Chandler was precluded from asserting that there was no difference between Florida and Texas law. *See Dobbins v. Coruthers*, 864 S.W.2d 754, 756 (Tex.App.— Houston [1st Dist.] 1993, no writ). More importantly, Chandler's change of position—and appellants' motion—came too late because the trial court had already determined that Texas and Florida differed when it made its pre-trial ruling on choice-of-law.

was delivered unconditionally to Chandler and his agent and thus, is deemed to have been made in Florida. *See, e.g., American Nat'l Ins. v. Huckleberry*, 638 F.Supp. 233, 236 (N.D.Tex.1986). The yacht, while covered for voyages in a variety of geographic areas, was berthed in Florida at the time it was insured. Notice of the claim occurred when Gallagher Braniff notified Underwriters' agent in Florida, not when Captain Richards notified Chandler's agent in Texas. At the time of the loss, Chandler maintained residence in both Arizona and Florida. At the time suit was filed and at the time of trial, Chandler lived in Florida.

The Texas contacts are that Chandler's agent, Gallagher Braniff, is located in Texas and Underwriters' agent, Hull, has a subsidiary with two offices located in Texas. These contacts do not significantly relate to the issue in dispute nor implicate state interests so as to justify application of Texas law. While Texas has an interest in protecting its *residents* from acts of bad faith or unfair claim settlement practices committed by insurers doing business in the state, that interest is not implicated here. *See W.R. Grace & Co. v. Continental Cas. Co.*, 896 F.2d 865, 883 (5th Cir.1990) (opinion on motion for rehearing) (per curiam) (holding that TEX.INS.CODE ANN. art. 21.42 does not mandate application of Texas law where insurance contract not payable to Texas resident or inhabitant). No Texas defendant, injured party, or property is involved. The insured, Chandler, is a Florida resident seeking damages for alleged bad faith and/or unfair claim settlement practices by a British insurance syndicate and a Florida insurance broker under an insurance policy issued in Florida.[3] Undoubtedly, Florida has an interest in protecting its residents from alleged bad faith or unfair insurance trade practices by a foreign insurance syndicate acting through a Florida broker under a policy issued in Florida.

The fact that Underwriters' agent had a subsidiary that did business in Texas or that Chandler's agent was located in Texas is inconsequential. As courts have stated, it is not the number of contacts with a particular state that is determinative, but the qualitative nature of the particular contacts insofar as they implicate important state policies underlying the particular substantive issue. *Albany Ins.*, 927 F.2d at 891; *Duncan*, 665 S.W.2d at 421. Here, Hull's subsidiary had absolutely no connection to this dispute. Although Chandler suggests that the Houston office of the Hull subsidiary played a role in handling his claim, the record reflects otherwise. According to the deposition testimony of Hull's Senior Executive Vice–President, Ed Calabrese, and the manager of Hull's Houston office, Richard Lannin, the Houston office dealt with insurance in the energy business, not with marine insurance. More importantly, Lannin testified both by deposition and affidavit that his office had nothing to do with Chandler's claim. Chandler claims that Lannin's testimony is not credible because his deposition testimony directly contradicts his affidavit testimony. We disagree. Lannin's deposition testimony that his office does not place marine insurance and that he had no knowledge of the underlying facts of Chandler's lawsuit is entirely consistent with his affidavit testimony that the placement of Chandler's policy did not occur in Texas and that all dealings relating to the Chandler policy were done in Hull's Florida offices. While Lannin may have been speculating as to where "all dealings relating to the Chandler policy" occurred, it is clear from his testimony that his office had nothing to do with placing Chandler's policy or processing his claim.

Finally, Chandler points to the affidavit of Mark Jones, which concludes that Texas has a significant relationship to this dispute simply because a Texas insurance agent, acting on behalf of a non-resident insured, performed a variety of tasks under a policy

---

**3.** We note that Chandler claims that Hull is independently liable for its alleged tortious conduct. Although this dispute involves interpretation of an insurance contract, Hull's liability in tort depends upon the existence of an agency relationship or breach of that agency relationship. Thus, the applicable law is that of the state where the insurance agent was located when the agent acted to the detriment of the insured or the insurer. *See Arkwright–Boston Mfr. Mut. Ins. v. Energy Ins. Agency, Inc.*, 659 F.Supp. 97, 99–100 (S.D.Tex.1987). Because Hull allegedly denied Chandler's claim in Florida, Florida law applies.

issued in another state. This affidavit is nothing more than an attempt by Chandler to convert one contact into multiple contacts and at best, shows that Gallagher Braniff was merely a conduit through which Chandler communicated with appellants. Thus, we find that only Florida, not Texas, has an interest in the resolution of this dispute.

Hence, we sustain Underwriters' seventeenth point of error and Hull's twelfth point of error complaining about the trial court's application of Texas law instead of Florida law. In light of our disposition, it is unnecessary for us to address appellants' remaining points of error or Chandler's cross-points. Accordingly, we reverse the judgment of the trial court and remand to the trial court for proceedings consistent with this opinion.