ST. PAUL INSURANCE COMPANY
OF ILLINOIS, Plaintiff,
Counter–Defendant,

v.

GREAT LAKES TURNINGS, LTD., National Material Trading, National Pinkert Steel, a Division of National Materials, Ltd., and Tank Industries, Inc., Defendants, Counter–Plaintiffs.

GREAT LAKES TURNINGS, LTD.,
Third–Party Plaintiff,

v.

ALEXANDER & ALEXANDER, INC.,
Third–Party Defendant.

No. 91 C 2019.

United States District Court,
N.D. Illinois, E.D.

Aug. 5, 1993.

See also 774 F.Supp. 485.

Warren J. Marwedel, Michael C. Neubauer, Dennis Minichello, Keck, Mahin & Cate, Chicago, IL, for St. Paul Fire & Marine Ins. Co.

John H. Mathias, Jr., Robert R. Stauffer, Jenner & Block, Joel S. Feldman, Gary Todd Jackson, James A. Rolfes, Sachnoff & Weaver, Ltd., Chicago, IL, for Great Lakes Turnings, Ltd.

John H. Mathias, Jr., Robert R. Stauffer, Jenner & Block, Joel S. Feldman, Gary Todd Jackson, Sachnoff & Weaver, Ltd., Chicago, IL, for Nat. Material Trading, Nat. Pinkert Steel and Tank Industries, Inc.

William M. Stevens, McBride, Baker & Coles, Thomas Raymond Hill, Kurt M. Zitzer, Rooks, Pitts & Poust, Chicago, IL, for Alexander & Alexander, Inc.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This is a marine insurance case. Counts II and III of the Second Amended Complaint ask for rescission of an insurance policy under the doctrine of *uberrimae fidei* (utmost good faith and honesty) based on misrepresentations and nondisclosures which the Defendant assureds allegedly made to the Plaintiff insurer. The Defendants have filed a motion to dismiss Counts II and III of the Second Amended Complaint. They assert that *uberrimae fidei* is not applicable and that, accordingly, the Illinois doctrine of ordinary good faith in insurance contracts governs this dispute. Under this doctrine, the Defendants assert that the Plaintiff has not stated a claim for relief.[1] For the following reasons, the motion to dismiss is denied.

## BACKGROUND

The Plaintiff, St. Paul Insurance Company of Illinois, insures ship charterers against liabilities incurred on chartered voyages. The Defendant, Great Lakes Turnings, Ltd. ("Great Lakes"), fashions and transports steel turnings. In June 1987, Defendant Great Lakes took out a one-year charterer's protection and indemnity "open policy" with the Plaintiff to insure voyages it would charter to ship its steel turnings between the Great Lakes area and Spain ("the Policy"). An open marine insurance policy is one for which a premium is typically paid for each individual voyage. *See* George J. Couch, 15 *Couch on Insurance* 2d § 55:2 (rev. ed. 1979); John Alan Appleman, 4 *Insurance Law and Practice* § 2390 (Berdal ed. 1979 & Supp.1991). Unlike a "valued" policy, the assured is usually required to declare each voyage made within the duration of the policy. *See id.* (Supp.1991). The Policy was renewed in 1988, 1989 and 1990. Between 1987 and 1990, the Defendants chartered thirty-seven voyages and informed the Plaintiff of and paid the premium for five of these. (Second Am.Compl. Count I ¶ 79.)

Clauses 10 and 14 of the Policy provide that the assured must give prompt notice of changes in policy conditions and pay additional premiums if necessary, and that "[t]he Assured agrees to advise the Assurer as soon as practicable the Name, Tonnage, and On Hire and Off Hire date of all vessels chartered during the currency of the policy." (Pl.'s Ex. 1.) The Plaintiff asserts that Form SP 23 (a standard marine P & I form) was also part of the Policy. In relevant part, the Form SP 23 provides that the Defendant will promptly notify and forward to the Plaintiff information about any occurrence which may result in liability.

On or about February 10, 1990, the Defendants chartered the M/V Star I to transport steel turnings from a port in Louisiana to Pasajes, Spain. This charter was not one of the five which was declared or for which a premium was paid to the Plaintiff. The ship

---

1. For the purposes of this opinion, all allegations and all reasonable inferences drawn therefrom are deemed true. *See, generally,* Charles Wright & Arthur Miller, 5A *Federal Practice and Procedure:* Civil 2d § 1357 (West Publishing, 2d ed. 1990).

arrived in port at Pasajes on or about March 6, 1990. Sometime on March 7, 1990, the ship was allegedly damaged by a fire in the cargo holds. The owner of the M/V Star I is presently suing Defendant Great Lakes in the United States District Court for the Southern District of New York, alleging that the negligence of its agents and/or employees caused the fire which damaged the ship. The Plaintiff has brought the instant suit seeking a declaratory judgment that the Policy did not cover this damage. In Counts II and III, which are the object of this motion to dismiss, the Plaintiff alleges that the misrepresentations and nondisclosures of the Defendants were violations of the admiralty standard of utmost good faith in marine contracts (*uberrimae fidei*) and allow the Plaintiff to rescind the Policy.

## DISCUSSION

█ The standard governing this court's decision on a Rule 12(b)(6) motion is well established. Only if the allegations in the complaint, and all reasonable inferences drawn therefrom, could not support any cause of action may this court grant the motion. *See generally* Charles Wright & Arthur Miller, 5A *Federal Practice and Procedure: Civil 2d* § 1357 (West Publishing, 2d ed. 1990). The court, however, need not strain to find inferences favorable to the Plaintiff which are not apparent on the face of the complaint. *Coates v. Illinois State Board of Education,* 559 F.2d 445, 447 (7th Cir.1977).

█ It is undisputed that marine contracts, including marine insurance contracts, fall under federal admiralty jurisdiction in Article 3, Section 2 of the United States Constitution. *The New England Marine Insurance Co. v. Dunham,* 78 U.S. (11 Wall.) 1, 31, 20 L.Ed. 90 (1871); *Kossick v. United Fruit Co.,* 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961); *Albany Ins. Co. v. Anh Thi Kieu,* 927 F.2d 882, n. 2 (5th Cir.), *cert. den.* —— U.S. ——, 112 S.Ct. 279, 116 L.Ed.2d 230 (1991); *Albany Ins. Co. v. Wisniewski,* 579 F.Supp. 1004, 1013 (D.R.I.1984). However, Congressional acquiescence to state insurance regulation has established a broad presumption that state codes regulating marine insurance contracts are valid notwithstanding the federal nature of admiralty law. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 313, 75 S.Ct. 368, 370, 99 L.Ed. 337 (1955), *citing* the McCarran–Ferguson Act, 15 U.S.C. §§ 1011 *et seq.*

When no particular state code exists to govern a marine insurance dispute, but the state does possess a general regulatory scheme over insurance contracts, state law will govern if the state has a substantial and legitimate interest in the furtherance of its own laws in the dispute and there is no relevant established federal precedent. *Kossick,* 365 U.S. 731, 81 S.Ct. 886; *Wilburn Boat,* 348 U.S. 310, 75 S.Ct. 368.

## I. Substantial and Legitimate State Interest in Marine Insurance.

█ Illinois has no substantial and legitimate interest in the application of its regulatory scheme concerning insurance nondisclosures and misrepresentations to the dispute at bar. As noted above, state insurance regulatory schemes do not govern marine insurance disputes if the state does not have a substantial and legitimate interest in the application of its law. *Kossick,* 365 U.S. at 738, 81 S.Ct. at 891; *Albany,* 927 F.2d at 887. In other words, unless the local interest in the controversy materially exceeds the federal marine concerns, federal admiralty law will apply. *Id.*

In *Kossick,* a seaman on shore in New York made an oral agreement by telephone with his employer regarding medical treatment. Under the New York Statute of Frauds, the oral agreement was not a contract; however, under federal admiralty law, the oral agreement was a contract. The *Kossick* court ruled that the controlling question for deciding whether state or federal law applies to a marine contract dispute is "whether the alleged contract, though maritime, is 'maritime and local.'" *Id.,* 365 U.S. at 738, 81 S.Ct. at 892 (citation omitted). This balancing of state and federal interests addresses the "process ... of accommodation, entirely familiar in many areas of overlapping state and federal concern," that allows states to maintain an interest in the "status and well-being" of its citizens. *Kos-*

*sick*, 365 U.S. at 739, 81 S.Ct. at 892. The Supreme Court found that the application of state law would disturb the uniformity of marine law because such an oral contract "may well have been made anywhere in the world, and that the validity of it should be judged by one law wherever it was made." *Id.* at 741, 81 S.Ct. at 893. Moreover, the Supreme Court held that the contract at issue was not "peculiarly a matter of state and local concern." *Id.* (citation omitted).

Likewise, in the case at bar, the contract at issue is not peculiarly a matter of state and local concern.[2] First, the Illinois statute on point, 215 ILCS 5/154, specifically excludes marine insurance from its scope: "[t]his section shall not apply to policies of marine ... insurance." 215 ILCS 5/154. The statute requires an insurer to request specific information and for the insured to intentionally provide a false reply before a policy can be avoided. 215 ILCS 5/154 (Michie 1993); *Preferred Risk Mutual Insurance Company v. Hites*, 125 Ill.App.2d 144, 259 N.E.2d 815 (1970). This standard demands substantially less strict behavior of assureds than the federal standard in which any nondisclosure or misrepresentation, even if made unknowingly, will void the policy if it pertains to information material to the risk assumed by the insurer. *Ingersoll Mill. Mach. Co. v. M/V Bodena*, 829 F.2d 293, 308 (2d Cir.1987); *See* 12A Appleman §§ 7271–73. Thus, 215 ILCS 5/154 indicates that Illinois has not asserted any particular interest in the dispute at bar.[3]

■ Second, the international and commercial nature of the case at bar puts this dispute outside the sort of concerns contemplated by Illinois insurance regulations. Cases in which the federal courts applied state insurance laws involve particularly local or regional maritime matters. For example, in *Irwin v. Eagle Star Insurance Co.*, 455 F.2d 827 (5th Cir.1972), the state law was applied because the insurer and the broker were Florida registered business agents, the plaintiff was a Florida resident, and the damaged yacht at issue was anchored in Florida waters when she sank. *Id.*, at 830. In contrast, in the case at bar, the controversy involves an insurance policy covering ocean crossing charters from the Great Lakes to Europe for the carriage of international commerce. (Second Amended Complaint, Count I ¶ 10).

If the dispute before the court involved, for instance, the Star of Chicago, one of the numerous vessels in this district which provides dinner cruises on Lake Michigan just off shore from downtown Chicago, then a different result would probably follow. That vessel presumably: employs primarily Illinois residents, serves primarily Illinois dinner-goers, brings in tax revenue for Illinois and for the city of Chicago, rarely if ever leaves state waters, and retains support services which enable its operation from primarily Illinois and regional business entities. The Defendant here resembles more the QE II than the Star of Chicago.

Accordingly, since Illinois has only a minimal interest if any in this dispute, *uberrimae fidei* governs this case. Even if Illinois did have a substantial and legitimate interest though, as discussed below, *uberrimae fidei* would still apply.

## II. *Uberrimae Fidei* is Established Federal Precedent.

Prior to 1955, it was generally accepted that *uberrimae fidei* applied to all of the conduct which assureds and insurers accorded each other regarding marine insurance. *See generally* Graydon S. Starring, *Admiralty and Maritime Law: Selected Topics*, 26 Tort & Ins. L.J. 538 (Spring 1991). Some

---

2. The states generally exempt marine insurance from the kind of licensing and rate regulations that apply to other types of insurance. *See generally* Thomas J. Schoenbaum and A. N. Yannapoulos, *Admiralty and Maritime Law: Cases and Materials* 525–26. *See also* 215 ILCS 5/154 ("This section shall not apply to policies of marine ... insurance.") and 215 ILCS 5/4 (exempting from class of marine insurance the loss from various perils of the sea and waterways).

3. As part of their effort to avoid this conclusion, the Defendants cite *Preferred Risk Mutual Insurance Company v. Hites*, 125 Ill.App.2d 144, 259 N.E.2d 815 (1970). This reliance on *Preferred Risk*, however, is misguided. That case merely applied the ordinary Illinois good faith standards to automobile insurance policy holders.

confusion sprung up that year when *Wilburn Boat Co. v. Fireman's Fund Ins. Co.* constricted the range of scenarios to which *uberrimae fidei* applied. *Id.*

In *Wilburn Boat,* the Supreme Court ruled that because Congress established a strong presumption that states should regulate insurance contracts, if there was not an established federal precedent of applying federal admiralty law to a particular type of marine insurance dispute, then the state insurance regulatory scheme would govern. Because at that time there was not a federal admiralty doctrine concerning the discharge of express and discrete contractual duties, i.e. *express warranties,* the Supreme Court declined to expand the federal admiralty standard into a new area and instead allowed the strong presumption of state regulation to prevail.

In that case, the owner of a small houseboat which operated on Lake Texoma, a small artificial lake between Texas and Oklahoma, had taken out a marine insurance policy to cover loss by fire. Within the duration of the policy, the owners used the boat for commercial purposes to transport passengers and also transferred legal title of the boat. Both commercial use and title transfer were breaches of express warranties of the insurance policy. The boat was destroyed by fire, and the owners sought to collect on the policy. Under Texas law, the insurance company could not rescind the policy based on the assured's breaches of warranties. The insurer relied instead on the federal doctrine of utmost good faith in admiralty law in refusing payment for the loss. After finding no federal precedent for applying the standard of utmost good faith to *express warranties,* the Supreme Court ruled that Texas insurance law and not federal admiralty law applied to this dispute.

Subsequent to *Wilburn Boat,* the courts have differed in the types of factual scenarios in which they concluded that there is established federal precedent. The rulings in the other courts of appeals on the extent to which *uberrimae fidei* applies in a marine insurance setting have ranged from automatic application of the federal rule, *e.g., Knight*

*v. U.S. Fire Ins. Co.,* 804 F.2d 9, 13 (2d Cir.1986) ("It is well-established under the doctrine of *uberrimae fidei* that the parties to a marine insurance policy must accord each other the highest degree of good faith."); *Puritan Ins. Co. v. Eagle S.S. Co. S.A.,* 779 F.2d 866, 870 (2d Cir.1985); *Ingersoll Mill. Mach. Co. v. M/V Bodena,* 829 F.2d 293, 308 (2d Cir.1987); to reluctant application of the state rule, *e.g., Albany,* 927 F.2d at 889 ("[N]o opinion of this Court has ever explicitly authorized the application of the *uberrimae fidei* doctrine to invalidate a marine insurance policy.... We ... conclude, albeit with some hesitation, that the *uberrimae fidei* doctrine is not 'entrenched federal precedent.'")

The Seventh Circuit is among those which have not yet addressed *Wilburn Boat,* nor ruled at all on this aspect of marine insurance contracts. This court is therefore obliged to determine the extent to which *uberrimae fidei* should apply to marine insurance disputes in this circuit. As an initial matter, this court notes that the case at bar is factually distinguishable from *Wilburn Boat* for two reasons. First, *Wilburn Boat* involved discrete contractual duties (i.e. express warranties) which the assured allegedly breached, whereas at bar the dispute covers an ongoing obligation to report changes material to the risk assumed by the insurer. Second, *Wilburn Boat* involved an inland marine matter while the case at bar involves a trans-ocean commercial setting.

■ Given that the case at bar is distinguishable, the court must determine if there is established federal precedent governing this particular dispute. The court notes two dispositive points. First, if it applies anywhere, *uberrimae fidei* applies to those elements of a marine insurance policy which establish ongoing and continuous contractual duties between the parties. Second, the need for a single national voice in the field of international trade, and the need for harmonization of marine insurance laws with the laws of Great Britain, have both long been recognized as justifications for applying a uniform federal doctrine to marine disputes.[4]

---

4. *See, e.g.,* Schoenbaum and Yannopoulos, *supra,* at 511, for an interesting description of how

The standard of utmost good faith in an assured's ongoing contractual obligations has numerous purposes, including: protecting insurance company assets and the assets of policy holders; deterring the submission of misleading information; promoting personal integrity by imposing harsh penalties on dishonesty; preventing the imposition of frauds and perjuries on the court; and injecting certainty, predictability and uniformity into the law. *See generally* Duncan B. Cooper III, *Misrepresentations and False Warranties in Insurance Applications,* 58 Ill.Bar J. 962 (Aug. 1970); *cf. Stone v. Those Certain Underwriters at Lloyds,* 81 Ill.App.3d 333, 336–37, 36 Ill.Dec. 781, 401 N.E.2d 622 (5th Dist.1980) ("[T]he law relating to an insured's duty to make truthful disclosures and representations in applications for insurance arose from maritime law applications.").

One treatise on insurance law contains an eloquent statement of why utmost good faith applies particularly to parties to a marine insurance contract.[5]

> [I]t must be recognized that marine insurance is big business. The amounts involved in such policies, usually, are comparatively large. The parties requesting insurance are not unskilled laymen venturing into an unknown field. Shipowners are experts in their field and it would create an intolerable situation to permit such people to shift their losses through subterfuge or nondisclosure of facts available to them. The subject of insurance is not always available for inspection by the underwriter. Ships and cargo may be at sea when coverage is requested.

7 Appleman § 4541 (citations omitted). *See also, Knight,* 804 F.2d at 10–12. Ongoing contractual obligations, such as the duty in the Policy at bar to declare newly chartered voyages, thus have long operated under a standard of utmost honesty between the parties of a marine insurance contract. *Higgie v. American Lloyds,* 14 F. 143 (N.D.Ill.1882)

(holding that a misrepresentation of a material fact essential to the determination of the risk under a marine insurance contract renders it voidable by the insurer); Graydon S. Starring, *Admiralty and Maritime Law: Selected Topics,* 26 Tort & Ins.L.J. 538 (Spring 1991).

Maritime disputes which call for a single national standard, such as those based on facts of an international and commercial nature, are particularly susceptible to federal admiralty jurisdiction. In *Moragne v. States Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), for example, the Supreme Court confirmed common law wrongful death recovery in all federal waters with the goal of

> removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts [citations omitted]. Such uniformity will ... give effect to the constitutionally based principle that federal admiralty law should be 'a system of law coextensive with, and operating uniformly in, the whole country.' *The Lottawanna,* [88 U.S.] 21 Wall. 558, 575 [22 L.Ed. 654] (1875).

Id., at 401–402, 90 S.Ct. at 1788. Moreover, the Jones Act, 46 U.S.C.App. § 688, the Death on the High Seas Act, 46 U.S.C.App. §§ 761–68, and the Carriage of Goods by Sea Act, 46 U.S.C.App. §§ 1300–15, are just three examples of Congressional will exerted to assure uniform treatment of legal liability on behalf of citizens and corporations engaged in international trade and commerce on the oceans. *See* Appleman § 7468 ("The interpretation of a marine policy has been considered not to be a question of morals or of public policy, the important thing being to secure uniformity of an interpretation in a commercial world embracing more than one continent and more than one ocean.").

The custom of marine shippers and American courts to harmonize their interpretation

---

marine insurance played a determinative role in the decline of the Spanish Empire in the sixteenth century, *summarized from Spanish Wool and Dutch Rebels: The Middleburg Incident of 1574,* 82 Am.Hist.Rev. 312 (Apr. 1977).

**5.** "Probably in no other commercial field have the common law courts referred so much to the authority of treatises or been so 'richly endowed' with them." 26 Tort & Ins. L.J. at 542–46, *citing* Sir Michael John Mustill, *Fault and Marine Losses,* 1988 Lloyd's Maritime and Commercial Law Quarterly 310, 313 n. 8.

of marine insurance policies with the laws of Great Britain illustrates that maritime disputes with an international flavor require a single national voice for resolution. *See Queen Insurance Co. v. Globe & Rutgers Fire Ins. Co.,* 263 U.S. 487, 493, 44 S.Ct. 175, 177, 68 L.Ed. 402 (1924) ("There are special reasons for keeping in harmony with the marine insurance laws of England, the great field of this business."); *Calmar S.S. Corp. v. Scott,* 345 U.S. 427, 443, 73 S.Ct. 739, 747, 97 L.Ed. 1125 (1953) (expressing need for harmony of laws with England); *Antilles Steamship Co. Ltd. v. Members of the American Hull Insurance Syndicate,* 733 F.2d 195, 198 (2d Cir.1984) (following English version of meaning of disputed clause).

The British Marine Insurance Act of 1906, 6 Edw. 7, c. 41 ("the Act"), was "basically a codification of settled judicial doctrine relating to ... disclosures and representations...." Schoenbaum and Yannopoulos, *supra,* at 528. As such, it is cited by American courts seeking information on which doctrines are actually established maritime precedent. *E.g., Lenfest v. Coldwell,* 525 F.2d 717, n. 15 and accompanying text (2d Cir. 1975) ("It is the general rule in this country ... that American courts will look to British law for meaning and definition in this field."); *Delta Supply Co. v. Liberty Mut. Ins. Co.,* 211 F.Supp. 429 (S.D.Tex.1962) (asserting that federal courts look to the laws of England to interpret marine insurance unless public policy requires following a different rule). Among the provisions in the Act is the following:

### Insurance is uberrimae fidie

17. A contract of marine insurance is a contract based upon the utmost good faith, and, if the utmost good faith be not observed by either party, the contract may be avoided by the other party.

Schoenbaum and Yannopoulos, *supra,* at 528, *quoting* the Act. The acceptance of the Act for purposes of interpretation in the federal courts demonstrates that it is "entrenched federal precedent" to apply the *uberrimae*

*fidei* doctrine to marine insurance contracts, especially to those involving issues of international trade or commerce.

Judicial precedent should not be casually dismissed by allowing a local regulatory scheme to interfere with international transactions. Even though some circuits have acquiesced to ordinary state insurance regulation, they have done so on facts pertaining to local economic interests. *See, e.g., Irwin,* 455 F.2d 827. Indeed, to decide that *uberrimae fidei* is not established federal precedent in this dispute would require this court to ignore four hundred years of judicial decisions, the entire history of insurance, and the need for uniformity and coherence of a vital international industry.[6]

Accordingly, the federal admiralty doctrine of *uberrimae fidei* applies to marine insurance disputes over ongoing contractual obligations between parties engaged in international and commercial matters. Given this court's decision that *uberrimae fidei* applies (both because Illinois has a minimal interest if at all in the dispute and because *uberrimae fidei* is established federal precedent for the type of dispute at bar), and accepting the well-pleaded facts in the Second Amended Complaint as true, the Plaintiff has stated a claim for relief under the federal doctrine of *uberrimae fidei.* The alleged misrepresentations and nondisclosures concerning the declaration of new charters, the payment of premiums, and the occurrence of events material to assumed risk, if proven true, would support a finding that the Defendants breached the duty of utmost good faith. Accordingly, the Defendants' Motion to Dismiss is denied.

### CONCLUSION

For all of the foregoing reasons, the Defendants' Motions to Dismiss Counts II and III of the Plaintiff's Second Amended Complaint are denied.

---

6. The court expresses no opinion on whether the doctrine of *uberrimae fidei* would apply to maritime insurance on facts of a less commercial or international scope. Nor is it necessary to ponder whether the Plaintiff has asserted a claim for relief under Illinois insurance law.