**PROGRESSIVE NORTHERN INSURANCE COMPANY, Plaintiff,**

v.

**Fred BACHMANN, Defendant.**

**No. 03–C–0566–C.**

United States District Court, W.D. Wisconsin.

April 19, 2004.

---

Ann E. Curtiss, Bell, Gierhart & Moore, S.C., Madison, WI, for Progressive Northern Insurance Company.

Steven E. Goldman, Goldman & Hellman, Brookline, MA, for Progressive Northern Insurance Company.

Anthony R. Varda, Dewitt, Ross & Stevens, Madison, WI, for Bachmann, Fred.

## OPINION AND ORDER

CRABB, District Judge.

In this admiralty and maritime case, plaintiff Progressive Northern Insurance Company seeks judgment declaring that it is not obligated under the terms of an insurance policy to cover damages to a powerboat owned by its insured, defendant Fred Bachmann. Plaintiff contends that the policy is void because defendant misrepresented the insured vessel's maximum speed and horsepower. Alternatively, plaintiff contends that it is not liable to defendant under the terms of its policy because the damage to the boat was the result of some internal defect or mechanical failure as opposed to a collision with another object. Defendant has filed counterclaims for breach of contract and tort in which he contends that plaintiff acted in bad faith by failing to investigate his claim properly. Defendant concedes that this case is properly brought in admiralty because it is a suit for a declaration of rights under the terms of a policy of marine insurance. *Continental Cas. Co. v. Anderson Excavating & Wrecking Co.*, 189 F.3d 512, 517 (7th Cir.1999). Jurisdiction is present under 28 U.S.C. § 1333(1).

The following motions are before the court: defendant's motion for summary judgment on all of plaintiff's claims; plaintiff's cross motion for partial summary judgment on its claim that defendant misrepresented the boat's horsepower; defendant's motion to strike the affidavit of insurance agent Kevin Kline that plaintiff filed in support of its motion for summary judgment; plaintiff's motion for bifurcated proceedings and a stay of discovery; and plaintiff's motion to strike defendant's demands for a jury trial and for attorney fees.

Summary judgment will be granted to defendant on the misrepresentation claims. Plaintiff is estopped from seeking to avoid the policy on the basis of defendant's alleged misrepresentation concerning his boat's horsepower because it did not provide timely notice to defendant of its intent to rescind the policy on that basis, as required by Wis. Stat. § 631.11(4)(b). In reaching this conclusion, I find that this case must be decided under state law because the state's interests in this case are superior to those of federal admiralty law. The conclusion that plaintiff is barred from rescinding the policy for the alleged misrepresentation of the boat's horsepower makes it unnecessary to decide defendant's motion to strike the affidavit of Kevin Kline. As for plaintiff's claim that defendant misrepresented his boat's maximum speed, defendant is entitled to summary judgment under either state or federal law because plaintiff has not adduced any admissible evidence to refute that adduced by defendant that shows that his boat cannot exceed 75 miles per hour, as stated on his application.

A material dispute of fact exists regarding whether the damage to defendant's

boat was caused by a collision or a mechanical failure. The objections raised by defendant to the opinion of plaintiff's expert on causation go to the opinion's weight, not its admissibility. Therefore, I must deny defendant's motion for summary judgment on that issue.

Because there are issues for trial that are common to the coverage dispute and defendant's counterclaims, I am denying plaintiff's motion to hold separate trials on the claims. In light of this, the motion for stay of discovery must be denied. Furthermore, in order to protect defendant's constitutional right to a jury trial on his counterclaims, the entire case will be tried to a jury. Finally, it is unnecessary to strike defendant's demand for attorney fees because the parties agree that such fees can be awarded as damages if there is a finding of bad faith.

Defendant's motion for summary judgment was far more difficult to resolve than it would have been had the parties followed the court's Procedures for the Filing of Summary Judgment Motions, a copy of which was provided to counsel with the preliminary pretrial order issued by the magistrate judge. Both parties are represented by counsel who practice frequently in this court and have had ample opportunity to become familiar with the procedures. I regret now that I did not require the parties to start over again when it became apparent that defendant had failed to file a separate, complete statement of proposed facts and plaintiff had filed a statement of disputed facts that contained no citations to any evidence in the record. Had the parties followed the court's procedures as they were directed to do, their submissions would have been more focused and comprehensive. It is possible that with more focus on the actual disputes in the case, they would have directed their arguments to those disputes. Despite the deficiencies in the submissions, however, I am persuaded both that it is possible to determine which facts are undisputed and that it is proper to enter partial summary judgment for defendant on plaintiff's misrepresentation claims.

I find from the affidavits submitted by the parties that the following facts are material and undisputed.

## UNDISPUTED FACTS

Plaintiff Progressive Northern Insurance Company is a corporation organized and existing under the laws of the state of Ohio, having its office and principal place of business located in Mayfield Village, Ohio. Defendant is a resident of Wisconsin.

In 2000, defendant purchased a 1998 34–foot Wellcraft Scarab power boat. Defendant contacted Kevin Kline, an insurance agent for Hausmann–Johnson Insurance, about obtaining insurance coverage for the boat. ACE USA issued an insurance policy to defendant affording coverage for the boat. The declaration page of that policy indicates that the horsepower rating of the boat's engines is 415 each.

In late July 2003, defendant completed an application for a new policy of insurance from plaintiff for the 1998 Scarab. An application form was completed by Jessica Tischhauser, an agent for Hausmann–Johnson Insurance. Page two of the application contained a description of the boat to be insured, showing the horsepower of the boat's two engines as 415 each. Tischhauser obtained this information from the first insurance policy.

On or about July 31, 2003, defendant reviewed and signed the application. Page four of the application directed defendant to answer "yes" or "no" to a set of five questions, three of which related to the boat's seaworthiness and its use as a primary residence or for commercial purposes. Question number three read: "Are any of the watercraft listed capable of speeds in excess of 75 MPH?" Question

number four read: "Do any of the water-craft listed have engine(s) with total horsepower in excess of 500 for single engine or 1000 for twin engines?" Defendant answered "no" to all questions and signed his initials next to each question. Defendant signed the application, affirming that the statements made therein were true to the best of his knowledge.

On or about July 31, 2003, plaintiff issued a marine insurance policy to defendant in the amount of $122,000 for hull and machinery coverage. The policy covered losses resulting from a collision with another object. It excluded coverage for loss resulting from wear and tear, gradual deterioration, mechanical or structural breakdown or latent defects. The policy contained a "Fraud or Misrepresentation" clause, which stated in pertinent part:

This policy was issued in reliance upon the information provided on your insurance application ... We may void this policy if you or an insured person have knowingly concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, at the time application was made. We may void this policy for fraud or misrepresentation after the occurrence of an accident or loss ...

We may deny coverage for an accident or loss if you or an insured person have knowingly concealed or misrepresented any material fact or circumstance (including but not limited to, material misrepresentations regarding the description of the covered watercraft to be insured; the location of the principal place of garaging; the purposes for which your watercraft will be used; and your place of residence), or engaged in fraudulent conduct in connection with the presentation or settlement of a claim.

On August 1, 2003, Steve Kreger, a boat mechanic at Pharo Marine in Waunakee, Wisconsin, inspected defendant's boat and performed repairs on it. On that date, he observed no evidence of wear, defect or damage to the gimbal housing, bell housing, propeller, underside of the hull or transom.

On or about August 10, 2003, defendant's boat incurred damaged while in operation on Castle Rock Flowage, a navigable water of the United States. The next day, defendant brought the boat to Pharo Marine for a repair estimate. Kreger inspected the boat and made several observations: wood fiber was embedded in the drive housing of the starboard drive; the gimbal at the bottom of the drive housing was broken off; the skeg on the port drive unit was damaged; the propeller on the starboard drive unit was bent up in a manner consistent with that seen when a boat collides with a submerged object; and the underside hull had a scrape leading up to the area in front of the stern drive unit. None of this damage had been present when Kreger inspected defendant's boat 10 days earlier. From his inspection and his 17 years of experience repairing boats, Kreger concluded that the damage was the result of the boat striking a submerged object, most likely a log.

Defendant contacted plaintiff and reported the damage to his boat. On August 14, 2003, Curtis Everson, a claims adjuster for plaintiff, went to Pharo Marine's service department and inspected defendant's boat. Everson took photographs, including a photo of the scrape under the hull, and talked to Kreger about the repairs that were needed. He observed the number "500" printed on the engine. The next day, mechanics at Pharo Marine ordered parts, pulled the lower unit skegs and propellers and sent them for repairs. They began repairing the boat on August 18, 2003.

On or about August 21, 2003, Tom Marek, a claims specialist for plaintiff, went to

Pharo Marine and inspected defendant's boat. At that time, the repairs were nearly complete. The propellers were out for repair, the new engine was ready to be installed, the old parts were lying next to the boat and a new transom had been installed. Marek saw the number "500" on the engine.

From his inspection, Marek concluded that the damage to the boat was the result of mechanical failure and not a collision. Marek's conclusion was based on the following: 1) he saw no evidence of any impact that might sever the drive assembly from the transom; 2) he saw no evidence that would one typically expect to observe if the boat had hit a submerged object, such as gear tooth damage, twisted splines to the propeller shaft, gear damage in the lower gear housing, damage to the vertical drive shaft or to its coupler, damage to the upper gear set or clutch or twisted splines on the input drive shaft; 3) he observed evidence consistent with a mechanical failure, including the separation of the input drive shaft from the rear yoke; evidence indicating that the cross bearing had spun against the gimbal ring for a long enough time to overheat and damage the tilt pivot pin and gouge out the ring to the point of failure; damage to both lower housings and propellers caused by a loose drive banging against the other during the ride back to shore; engine coupler splines that were badly worn; wear to the pivot points between the bell hosing and the gimbal housing; and severe galling on the lower thrust face between the drive housing and gimbal ring, indicating play. In addition, Marek noted that neither defendant nor his passenger had said that they had felt an impact before the boat began to experience mechanical problems on August 10, 2003.

Defendant's boat is equipped with two 1998 HP 500 Mercruiser engines. "HP 500" is just a name and not a guarantee of 500 horsepower. The HP 500 engine generates a horsepower of 470; because of modifications to defendant's boat, the engines probably generate around 460 horsepower.

Defendant has installed two GPS speedometers in his boat. As the boat has been configured at all relevant times, it has never reached 75 miles per hour, even when operated at full throttle, under optimum conditions. In part this is a consequence of defendant's having had to install mufflers on the engine for operation on inland lakes.

On September 5, 2003, plaintiff notified defendant that it was voiding the policy and denying coverage for the damage to the boat because defendant had misrepresented the speed of the boat on his insurance application. According to the letter, plaintiff's investigation had found that "your boat listed on this policy reaches speeds in excess of 75 MPH," contrary to defendant's representation on his application. In a separate letter, plaintiff informed defendant that its investigation had led it to conclude that the damage to the boat was caused by a mechanical breakdown as opposed to a collision with an object. Plaintiff did not notify defendant that it was seeking to avoid the policy on the ground that defendant had misrepresented the horsepower of his boat's engines until it filed its amended complaint on December 31, 2003.

## OPINION

### I. *MOTIONS FOR SUMMARY JUDGMENT*

#### A. *Defendant's Alleged Misrepresentation of Boat's Horsepower*

Both parties have moved for summary judgment on plaintiff's claim that defen-

dant misrepresented the boat's horsepower. Relying on Wisconsin law, defendant contends that plaintiff has not adduced evidence to show that defendant knew or should have known at the time he completed the application that the horsepower of his boat was not 415 or that the misrepresentation was material to plaintiff's decision to insure the boat. Alternatively, defendant contends that plaintiff is barred under Wisconsin law from avoiding the policy on the basis of this alleged misrepresentation because plaintiff did not provide timely notice to defendant of its intent to do so. Plaintiff has adduced evidence indicating that it would not have insured defendant's boat if it had known that its horsepower was 460 or 470, as defendant now admits it to be. Plaintiff contends that under the federal admiralty rule of *uberimmae fidei*, it is entitled to rescind the policy even if defendant made an honest mistake when he reported that the horsepower of his boat's engines was 415. Furthermore, argues plaintiff, defendant is precluded by this federal rule from raising any state law claims of estoppel or waiver. Deciding the parties' motions requires a review of the applicable state and federal law.

### 1. *The interplay between state and federal law*

Although it is undisputed that marine contracts, including marine insurance contracts, fall under federal admiralty jurisdiction in Article 3, Section 2 of the United States Constitution, *St. Paul Insurance Co. of Illinois v. Great Lakes Turnings, Ltd.,* 829 F.Supp. 982, 984 (N.D.Ill.1993) (citing cases), federal common law is not the exclusive source of law governing such contracts. In *Wilburn Boat Co. v. Fireman's Fund Insurance Co.,* 348 U.S. 310, 313, 75 S.Ct. 368, 99 L.Ed. 337 (1955), a case involving a policy of insurance for a recreational houseboat that operated on a small lake between Texas and Oklahoma,

the Supreme Court recognized that congressional acquiescence to state insurance regulation has established a broad presumption that state codes regulating marine insurance contracts are valid notwithstanding the federal nature of admiralty law. The Court held that it was proper to look to applicable state law in the absence of any federal admiralty rule that applied to the parties' dispute concerning the discharge of express warranties. *Id.* at 315–321, 75 S.Ct. 368. *See also Kossick v. United Fruit Co.,* 365 U.S. 731, 738, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961) (indicating that state law should apply when it "would not disturb the uniformity of maritime law"). After *Wilburn Boat,* courts have cited the case as establishing the rule that "[w]hen no particular state code exists to govern a marine insurance dispute, but the state does possess a general regulatory scheme over insurance contracts, state law will govern if the state has a substantial and legitimate interest in the furtherance of its own laws in the dispute and there is no relevant established federal precedent." *Great Lakes Turnings,* 829 F.Supp. at 984 (citing *Kossick,* 365 U.S. at 735, 81 S.Ct. 886; *Wilburn Boat,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337); *see also Ingersoll–Rand Financial Corp. v. Employers Insurance of Wausau,* 771 F.2d 910, 912 (5th Cir.1985) ("The interpretation of a contract of marine insurance is —— in the absence of a specific and controlling federal rule —— to be determined by reference to appropriate state law."); *Lien Ho Hsing Steel Enterprise Co. v. Weihtag,* 738 F.2d 1455, 1458 (9th Cir.1984) ("In the absence of federal admiralty law on the issue, the law of the state with the greatest interest in the issue controls.").

### 2. *The federal doctrine of uberrimae fidei*

Plaintiff insists that its claim for rescission is governed by the federal common law doctrine of *uberrimae fidei,* which im-

poses "the highest degree of good faith" upon the parties to a contract of marine insurance. As explained by the Supreme Court:

> The contract of insurance has been said to be a contract *uberrimae fidei*, and the principles which govern it, are those of an enlightened moral policy. The underwriter must be presumed to act upon the belief, that the party procuring insurance, is not, at the time, in possession of any facts, material to the risk which he does not disclose; and that no known loss had occurred, which by reasonable diligence might have been communicated to him. If a party, having secret information of a loss, procures insurance, without disclosing it, it is a manifest fraud, which avoids the policy ... And even if there be no intentional fraud, still the underwriter has a right to a disclosure of all material facts, which it was in the power of the party to communicate by ordinary means; and the omission is fatal to the insurance.

*McLanahan v. Universal Ins. Co.*, 26 U.S. 170, 185, 1 Pet. 170, 7 L.Ed. 98 (1828). *See also Great Lakes Turnings*, 829 F.Supp. at 986–988 (discussing doctrine's origins and purpose). The Supreme Court applied this doctrine as a "traditional" aspect of insurance law in general. *See, e.g., Stipcich v. Metropolitan Life Ins. Co.*, 277 U.S. 311, 316, 48 S.Ct. 512, 72 L.Ed. 895 (1928); *Phoenix Life Ins. Co. v. Raddin*, 120 U.S. 183, 189, 7 S.Ct. 500, 30 L.Ed. 644 (1887). However, as states began to take over regulation of the insurance industry, most abandoned the strict *uberrimae fidei* articulation in favor of standards more favorable to the insured. "Today, the sole remaining substantial vestige of the doctrine is in maritime insurance law." *Albany Insurance Co. v. Anh Thi Kieu*, 927 F.2d 882, 888 (5th Cir.1991) (citations omitted).

Modern maritime cases describe the doctrine of *uberrimae fidei* as requiring the party seeking insurance "to disclose all circumstances known to him which materially affect the risk." *Puritan Ins. Co. v. Eagle S.S. Co.*, 779 F.2d 866, 870 (2d Cir.1986) (citing *Btesh v. Royal Ins. Co. Ltd. of Liverpool*, 49 F.2d 720, 721 (2d Cir.1931)). "To be material, the fact must be something which would have controlled the underwriter's decision to accept the risk." *Knight*, 804 F.2d at 13. The insured is bound to communicate all material information voluntarily regardless whether the insurer made any inquiry concerning it. *Gulfstream Cargo, Ltd. v. Reliance Insurance Company*, 409 F.2d 974, 980–81 (5th Cir.1969). A failure by the insured to comply with this duty, "although it may arise from mistake, accident, or forgetfulness, is attended with the rigorous consequences that the policy never attaches and is void." *Id.*

### 3. *Wisconsin law of misrepresentation*

Wisconsin has enacted an extensive regulatory scheme governing contracts of insurance delivered or issued for delivery in the state. *See* Chapters 631 and 632 of the Wisconsin Statutes. With the exception of ocean marine insurance, Wisconsin has not created special rules governing contracts of insurance for boats. Accordingly, because the policy in this case was not for ocean marine insurance, Wisconsin's general rules governing contracts of insurance would apply.

Wis. Stat. § 631.11(1)(b) sets forth the conditions under which an insurer may rescind a policy on the basis of a misrepresentation by the insured:

> *Misrepresentation or breach of affirmative warranty.* No misrepresentation, and no breach of an affirmative warranty, that is made by a person other than the insurer or an agent of the insurer in

the negotiation for or procurement of an insurance contract constitutes grounds for rescission of, or affects the insurer's obligations under, the policy unless, if a misrepresentation, the person knew or should have known that the representation was false, and unless any of the following applies:

1. The insurer relies on the misrepresentation or affirmative warranty and the misrepresentation or affirmative warranty is either material or made with intent to deceive.

2. The fact misrepresented or falsely warranted contributes to the loss.

A statement is "material" if it had "a significant bearing upon an insurer's decision to insure the risks the policy is to cover." Wis. JI–Civil 3100.

In addition, Wisconsin has imposed an affirmative duty upon an insurer who seeks to rescind a policy on the basis of a misrepresentation by the insured. Under Wis. Stat. § 631.11(4)(b), an insurer is estopped from rescinding the policy or defending against a claim unless it notifies the insured of its intent to do so within 60 days after acquiring "knowledge of sufficient facts to constitute grounds for rescission of the policy ... or a general defense to all claims."

### 4. State law governs plaintiff's action for rescission

As should be clear from the foregoing discussion, Wisconsin law does not differ dramatically from federal admiralty law concerning the elements of a claim of material misrepresentation. However, it appears that if the federal doctrine controls, then defendant is precluded from asserting an estoppel defense grounded in state law. *See Certain Underwriters at Lloyds, London v. Giroire,* 27 F.Supp.2d 1306, 1312 (S.D.Fla.1998) (because breach of duty of utmost good faith voids policy *ab initio,* an insured may not raise affirmative defense

of waiver or estoppel where there has been material misrepresentation). *But see Gulfstream Cargo,* 409 F.2d at 982–983 (considering insured's argument that insurer waived right to avoid policy for insured's lack of full disclosure where facts communicated to insurer, though not complete, were sufficient to have caused reasonable underwriter to make further inquiry). Accordingly, I will consider whether *uberrimae fidei* is "established federal precedent" that supersedes state law with respect to the misrepresentation claim.

The federal district court for the Northern District of Illinois addressed this same question in *Great Lakes Turnings,* 829 F.Supp. 982, a case involving an insurance policy covering ocean-crossing charters from the Great Lakes to Europe for the carriage of international commerce. In deciding the charterer's motion to dismiss plaintiff's claims brought under the admiralty standard of *uberrimae fidei,* the court considered the extent to which, post-*Wilburn Boat,* the doctrine of utmost good faith remains "established federal precedent" that controls the conduct of the parties to a contract of marine insurance. In a thoroughly researched and well-reasoned opinion, the court concluded that *uberrimae fidei* is established federal precedent that should supersede state law "in marine insurance disputes over ongoing contractual obligations between parties engaged in international and commercial matters." *Id.* at 988. As support for its conclusion that parties to a marine insurance policy of international or commercial scope should be held to the utmost good faith standard, the court cited the need for a single national standard in the area of international trade and the American courts' custom of harmonizing the marine insurance laws with the laws of Great Britain. *Id.* at 987–88. The court noted the concerns giving rise to the duty of utmost good faith, namely, the large amounts at stake, the

sophistication of the shipowners, and the lack of practicable means for the insurer to inspect the ship or cargo that could be at sea at the time coverage is requested, and concluded that these concerns justified the continuing application of the doctrine "to those elements of a marine insurance policy which establish ongoing and contractual duties between the parties." *Id.* at 986. It is worth noting that the court stated that it was "express[ing] no opinion on whether the doctrine of uberrimae fidei would apply to maritime insurance on facts of a less commercial or international scope." *Id.* at n. 6.

In light of the decision in *Great Lakes Turnings* and the authorities cited therein, it is misguided if not disingenuous for plaintiff to insist dogmatically that *uberrimae fidei* governs the parties' conduct in this case. As the court explained in *Great Lakes Turnings,* there is a disagreement among the circuits as to the vitality of the *uberrimae fidei* doctrine after *Wilburn Boat. Compare Knight,* 804 F.2d at 13 (finding it "well-established" that doctrine of *uberrimae fidei* applies to marine insurance contracts) *with Anh Thi Kieu,* 927 F.2d at 889 ("spotty application" of doctrine in recent years indicated that *uberrimae fidei* doctrine is not entrenched federal precedent permitting insurer to invalidate marine insurance policy). Displaying a remarkable lack of candor, plaintiff has failed to mention, much less address, the decisions in *Wilburn Boat* or *Great Lakes Turnings.*

■ Having heard no arguments from plaintiff to the contrary, I am not convinced that *uberrimae fidei* is the proper standard to apply to plaintiff's action for rescission based on defendant's alleged misrepresentation of his boat's horsepower. Unlike *Great Lakes Turnings* and like *Wilburn Boat,* this case does not involve facts of any commercial or international scope but a policy of insurance for a recre-

ational boat that was damaged while in operation on an inland lake and that was available for plaintiff to inspect before it issued its policy. The Supreme Court has indicated that such localized maritime matters are better subject to state regulation than to federal admiralty law, which is concerned primarily with national and international commercial shipping. *See Wilburn Boat,* 348 U.S. at 322, 75 S.Ct. 368 (Frankfurter, J., concurring) ("there is no doubt that some matters are so predominantly restricted in the range of their significance that a uniform admiralty rule need not be recognized or fashioned.").

As noted previously, Wisconsin has not exempted recreational boat insurance from its laws regulating insurers doing business in Wisconsin and the policies they issue. In contrast to the minimal federal interest involved, the state has a substantial interest in regulating garden variety insurance for recreational boats operated within its borders. Such insurance policies do not differ from homeowners' or automobile liability policies in any significant way. In the absence of any significant federal interest, there is no compelling reason to find that the policy at issue in this case is any less a matter of state concern than other types of insurance that are regulated heavily in Wisconsin.

Furthermore, the conclusion that state law should apply to the misrepresentation claim is most consistent with the language of the parties' contract, which provides that plaintiff can avoid the policy if defendant "knowingly concealed or misrepresented any material fact or circumstance" at the time he applied for insurance. Plaintiff has not argued that the policy's fraud or misrepresentation clause contravenes public policy or is otherwise void or offered any other reason why this court should ignore the contractual language. *See King v. Allstate Ins. Co.,* 906 F.2d 1537, 1540

(11th Cir.1990) (finding in case involving marine insurance contract that contract language was controlling even though it conflicted with maritime law). Perhaps plaintiff is of the view that the contract simply incorporates the *uberimmae fidei* standard, but it has not made any arguments to that effect in its briefs. In any case, such a view would be debatable in light of the contractual language, which indicates that only a "knowing" misrepresentation of material fact by defendant would allow plaintiff to void the policy.

Accordingly, I conclude that state law governs plaintiff's attempt to avoid the policy on the ground that defendant made a material misrepresentation on his application. If plaintiff is estopped under state law from seeking to rescind the policy because of defendant's alleged misrepresentation of his boat's horsepower, then it is unnecessary to consider the merits of the misrepresentation claim. Accordingly, I will address defendant's estoppel argument first.

### 6. *Defendant's state law estoppel argument*

█ Defendant contends that plaintiff may not avoid the policy on the basis of the alleged misrepresentation of the boat's horsepower because plaintiff failed to comply with the notice requirements of Wis. Stat. § 631.11(4)(b). That provision states:

*Knowledge acquired after policy issued.* If after issuance of an insurance policy an insurer acquires knowledge of sufficient facts to constitute grounds for rescission of the policy under this section or a general defense to all claims under the policy, the insurer may not rescind the policy and the defense is not available unless the insurer notifies the insured within 60 days after acquiring such knowledge of its intention to either rescind the policy or defend against a claim if one should arise, or within 120 days if the insurer determines that it is

necessary to secure additional medical information.

Plaintiff has admitted that it had reason to believe that defendant had misrepresented his boat's horsepower when Everson first inspected defendant's boat and observed the number "500" printed on the engines on August 14, 2003. *See* Aff. of Curtis Everson, dkt. # 27, ¶ 12 ("I was aware of the existence of a coverage issue quite early in the course of this claim since I observed that the engines were twin 500 horsepower engines instead of the twin 415 horsepower engines that [defendant] stated they were in the course of an August 13, 2003 recorded statement."). Plaintiff does not deny that it did not inform defendant within the next 60 days of its intent to rescind the policy on this basis and it has not challenged the accuracy of defendant's contention that in failing to do so, it violated Wis. Stat. § 631.11(b)(4). For example, plaintiff has not argued that its notice to defendant that it was rescinding the policy on the basis of the alleged misrepresentation of the boat's speed was sufficient to warn defendant of both alleged misrepresentations. Indeed, plaintiff has not addressed Wis. Stat. § 631.11(b)(4) at all, having placed all its eggs in the *uberrimae fidei* basket. As a result, it has waived any challenge to defendant's contention that the statute operates to bar plaintiff from seeking declaratory judgment on its claim that defendant misrepresented the boat's horsepower. Accordingly, I must conclude that plaintiff is now barred under Wis. Stat. § 631.11(b)(4) from rescinding the policy or denying coverage on the ground that plaintiff misrepresented the horsepower of his boat's engines. For that reason, I will grant summary judgment to defendant on the horsepower misrepresentation claim. In light of this conclusion, it is unnecessary to decide defendant's motion to strike Kline's affidavit.

## B. *Defendant's Alleged Misrepresentation of Boat's Speed*

■ Defendant has moved for summary judgment on plaintiff's claim that he misrepresented the maximum speed of his boat. To prevail on his motion for summary judgment as to this issue, defendant must show that the relevant facts are not in dispute, that is, that no reasonable fact finder could find in plaintiff's favor. Defendant has submitted affidavits from himself and other individuals with personal knowledge who rode on the boat and observed the speedometer readings or who performed work on the boat in an effort to increase its maximum speed. All of these individuals swear that the boat's maximum speed is less than 75 miles per hour. The only evidence offered by plaintiff to refute this evidence are Everson's averments in his affidavit that he contacted several boat dealers and the boat manufacturer, Scarab, who told him that a boat like defendant's that is equipped with twin 500 horsepower engines would exceed 75 miles per hour. (Everson Aff., dkt. # 27, ¶ 8–9). Such third-party, out-of-court statements, when offered for the truth of the matter asserted as they are here, are inadmissible hearsay and cannot be relied on for the purpose of summary judgment. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996); *Wigod v. Chicago Mercantile Exchange*, 981 F.2d 1510, 1518–19 (7th Cir.1992). Even if the statements were admissible, they would be of no help to plaintiff because they do not answer the question of what speed a Scarab could attain with engines of 470 horsepower or with modifications to the engines similar to the modifications defendant made to his boat. Because plaintiff has not offered any other admissible evidence to refute defendant's evidence of his understanding of his boat's maximum speed at the time he filed his application for insurance, defendant's evidence stands unopposed. On the evidence in the record, no reasonable fact finder could find in plaintiff's favor on this issue. Accordingly, summary judgment must be granted to defendant on plaintiff's claim that it should be allowed to rescind the policy and deny coverage because defendant misrepresented his boat's maximum speed.

## C. *Coverage*

Relying primarily on the affidavit from Kreger, the mechanic at Pharo Marine, defendant contends that he is entitled to summary judgment on plaintiff's claim that the damage to his boat was caused by a mechanical failure and therefore not covered under the insurance policy. Although defendant concedes that plaintiff's claims specialist, Marek, concluded after his inspection of the boat that the damage was caused by mechanical failure and not a collision, he urges this court to strike Marek's affidavit on the ground that it is not admissible under Fed.R.Evid. 702.

First, defendant attacks Marek's qualifications, pointing out that in spite of Marek's years of experience as an insurance adjuster, there is nothing in his affidavit from which to conclude that he has any particular mechanical experience with boats and engines the size and complexity of defendant's. Defendant's main point, however, is that Marek's testimony is neither helpful nor reliable because Marek did not inspect the boat until after repairs had begun and the drive shift and transom had been repaired. Because of that, argues defendant, Marek did not observe certain evidence that was consistent with a collision, including a bent propeller, wood fiber embedded in the drive housing or a scrape on the underside of the boat. Defendant argues that Marek's failure to address any of this evidence in his affidavit renders his opinion so unreliable as to be inadmissible under Fed.R.Evid. 702.

Defendant's challenges to Marek's affidavit are well taken. Marek's affidavit is significant for what he *doesn't* say, namely, whether his opinion would be different if he had observed the same structural defects that Kreger (and presumably Everson) had observed or whether the defects he did observe could have been caused by a collision that precipitated a mechanical failure. Although these deficiencies will provide ample fodder for cross-examination at trial, they do not render Marek's opinion inadmissible. Contrary to defendant's argument, Marek's 11 years of experience as a damage appraiser makes him qualified under Rule 702 to render an opinion regarding causation. *See* Fed.R.Evid. 702 (expert witness may be qualified by "knowledge, skill, experience, training or education"); *Ancho v. Pentek*, 157 F.3d 512, 515 (7th Cir.1998) (discussing standard for admissibility of expert opinions). Nothing in his affidavit suggests that his opinion is based on "subjective belief or unsupported speculation," *Ancho*, 157 F.3d at 515, or that it is not relevant to the issues in dispute. Furthermore, Everson and Marek have denied that they authorized Pharo Marine to repair the boat, a contention I must accept as true when deciding defendant's motion for summary judgment. It would be unfair to strike Marek's opinion for his failure to observe evidence that must be presumed to have been removed or repaired through no fault of plaintiff's. Although one would have expected Marek to have conferred with Everson, who had inspected the boat and taken photographs of it *before* it was repaired, and incorporated those observations into his opinion, this omission goes to the weight and credibility of Marek's testimony, not its admissibility. Because Marek's affidavit creates a genuine dispute of fact concerning what caused the damage to plaintiff's boat on August 10, 2003, I must deny defendant's motion for summary judgment on this issue.

## II. *PLAINTIFF'S MOTION FOR BIFURCATED PROCEEDINGS AND A STAY OF DISCOVERY*

Having concluded that plaintiff is entitled to a trial on the cause of the damages to defendant's boat, I must consider plaintiff's requests for an order bifurcating and granting separate trials on the coverage issue and the counterclaims and for an order staying discovery regarding the counterclaims until after the coverage issue is decided. There also is the issue whether, if separate trials are not granted, the case should be heard by the court or the jury. It appears that the parties now agree that: 1) the issues raised by the counterclaims are sufficiently distinct and separate to merit separate trials; 2) the coverage issue should be tried to the court; 3) discovery should be stayed until coverage is decided; and 4) if coverage is found, the counterclaims should be tried to the jury or remanded to state court.

I begin with the motion to stay discovery. It is denied. Even if this court bifurcates the coverage claim from the counterclaim, any trial on the counterclaim would be held immediately after the trial on coverage concludes. Discovery on both should proceed simultaneously. I note that defendant filed a motion to compel discovery that is under advisement to the court. However, I anticipate that at least some of the areas of dispute between the parties will be affected by this order. Accordingly, I am not taking any action on the motion at this time. Defendant may renew his motion if, after receiving this opinion and order, he believes relevant discovery disputes remain that need court resolution.

As for bifurcation, I am not convinced that the issues regarding coverage and those related to the counterclaims are as distinct as the parties suggest. In one of the counterclaims, defendant alleges

that plaintiff breached its contract of insurance by refusing to pay for the repairs to defendant's boat. This seems to be the mirror image of plaintiff's claim that it was not liable under the terms of the contract because the damage to the boat was not a covered loss under the policy. Further, defendant accuses plaintiff of acting in bad faith by authorizing Pharo Marine to begin repairs on the boat and then denying coverage on the basis of its inspection of the boat after it had been partly repaired. Evidence concerning whether plaintiff actually authorized the repairs is likely to be an issue at trial on the coverage claim.

Because there is at least some overlap of the coverage issue and the counterclaims, the entire case should be heard by the same trier of fact. Further, the trier of fact should be a jury. Although plaintiff has argued that it is entitled to a non-jury trial on its admiralty claims, neither Rule 9(h) of the Federal Rules of Civil Procedure nor the Constitution forbids trial by jury in admiralty cases or creates a right to a non-jury trial. *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 20, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) ("no . . . [constitutional] requirement protects trials by the court"); Fed.R.Civ.P. 9(h) advisory committee's notes to 1966 amendment. In contrast, Fed.R.Civ.P. 38(a) states that the right to a jury trial, whether statutory or constitutional, "shall be preserved to the parties inviolate."

The Supreme Court has held that "where equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims." *Ross v. Bernhard*, 396 U.S. 531, 537–38, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970) (discussing

*Dairy Queen Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) and *Beacon Theatres* ). Thus, where there are issues common to both the equitable and legal claims, the issues "must be tried to a jury in order to prevent a judge's determination from foreclosing a party's right to have the issues in a common law suit tried by a jury." *Marseilles Hydro Power, LLC v. Marseilles Land and Water Co.*, 299 F.3d 643, 650 (7th Cir.2002) (citing *Dairy Queen, Inc.*, 369 U.S. at 472–73, 82 S.Ct. 894). It is no different when parties join admiralty claims with non-admiralty claims to which a right to a jury trial attaches. Accordingly, I conclude that plaintiff's election to proceed in admiralty does not preclude defendant from a right to a jury trial on his legal counterclaims. *Accord, e.g., Wilmington Trust v. United States District Court for the District of Hawaii*, 934 F.2d 1026 (9th Cir.1991); *Canal Barge Co. v. Commonwealth Edison Co.*, 2002 WL 206054, *3 (N.D.Ill.2002); *Sphere Drake Ins. PLC v. J. Shree Corp.*, 184 F.R.D. 258, 261 (S.D.N.Y.1999). But see *Jefferson Insurance Co. of N.Y. v. Maine Offshore Boats, Inc.*, 2001 WL 484040 (D.Me.2001) (admiralty defendant not entitled to jury trial on its non-admiralty counterclaim); *Norwalk Cove Marina, Inc. v. S/V ODYSSEUS*, 100 F.Supp.2d 113 (D.Conn.2000) (same).

Although I have concluded that the entire case should be tried to a jury because plaintiff's and defendant's claims involve common issues, I will consider bifurcating the claims at trial and presenting the coverage question to the jury first. This is because defendant might have evidence relevant to bad faith that is not relevant to the coverage dispute that could prejudice plaintiff's right to a fair trial on that issue. I will reserve deciding this question until discovery is complete and the parties know what evidence they will seek to present at trial.

Finally, I note that defendant's counterclaims for bad faith and breach of contract arise directly from the same transaction or occurrence upon which plaintiff's complaint is founded. This makes them compulsory counterclaims, *see* Fed.R.Civ.P. 13(a), over which this court has supplemental jurisdiction. *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974). Even if plaintiff loses on its claim for declaratory judgment, this court still would exercise jurisdiction over defendant's counterclaims because they do not raise any novel or complex issues of state law and they do not "substantially predominate" over plaintiff's claims. *See* 28 U.S.C. § 1367(c).

### III. *PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S DEMAND FOR ATTORNEY FEES*

In its reply, plaintiff concedes that this court may award attorney fees to defendant if it finds bad faith on the part of plaintiff. Plaintiff says that its motion to strike was meant to apply to defendant's demand for attorney fees only insofar as defendant might be requesting an award of attorney fees that is *not* premised upon a finding of bad faith. Defendant has stated in his brief that he is not requesting attorney fees as costs but as an element of damages awardable upon a finding of bad faith. Accordingly, because this issue is not in dispute, plaintiff's motion to strike defendant's attorney fee demand is denied as unnecessary.

### ORDER

IT IS ORDERED that:

1. Defendant Fred Bachmann's motion for summary judgment is GRANTED IN PART and DENIED IN PART;

2. Plaintiff's motion for summary judgment is DENIED;

3. Plaintiff's motion for a bifurcation of proceedings and stay of discovery is DENIED;

4. Plaintiff's motion to strike defendant's demand for a jury trial is DENIED;

5. Plaintiff's motion to strike defendant's demand for attorney fees is DENIED as unnecessary; and

6. Defendant's motion to strike the affidavit of Kevin Kline is DENIED as unnecessary.